**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| **LAKITA CARR, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF DARRALL THOMAS, AND ANGELINA LEFFYEAR, AS NEXT FRIEND FOR D.T.,  JR.,** §§§§§ | |
| **PLAINTIFFS,** §§§ | |
| **VS.** §§ | |
| **THE CITY OF SPRING VALLEY VILLAGE, THE CITY OF HEDWIG VILLAGE, MEMORIAL VILLAGE, AXON, (FORMALLY TASER INTERNATIONAL), JOSEPH DARREHSHOORI,  IN HIS INDIVIDUAL CAPACITY; TRENT B. WOOD IN HIS INDIVIDUAL CAPACITY; NATHAN FRAZIER, IN HIS INDIVIDUAL CAPACITY; RICHARD ANTONIO HERNANDEZ, IN HIS INDIVIDUAL CAPACITY; CARLOS PINEDA,  IN HIS INDIVIDUAL CAPACITY; ERIC SILLIMAN, IN HIS INDIVIDUAL CAPACITY;  MANNY AGUILAR, IN HIS INDIVIDUAL CAPACITY; DONALD NOWLIN, IN HIS INDIVIDUAL CAPACITY; AND MARK STOKES IN HIS INDIVIDUAL CAPACITY; AND JERRY HANSON, IN HIS INDIVIDUAL CAPACITY, SANDFORD, STEVE,  IN HIS INDIVIDUAL CAPACITY, DEFENDANTS,** §§§§§§§§§§§§§§§§§§§§§§§§§ | **CIVIL ACTION NO. 4:18-CV-02585**  **JURY DEMANDED** |

## PLAINTIFF'S AMENDED COMPLAINT

**TO THE HONORABLE DISTRICT COURT JUDGE SIM LAKE**:

1.      COMES NOW, Plaintiffs Lakita Carr, individually and as representative of the estate of Darrall Thomas, and Angela Leffyear, as next friend for D.T., the minor son of Darrall Thomas. Plaintiffs herein file this their amended complaint[1] complaining of the following Defendants:  the City of Spring Valley Village (the "CSVV"), the City of Memorial Village (the "CMV"), the City of Hedwig Village (the "CHV"), the Spring Branch Independent School District (the "SBISD") (collectively referred to as the "Villages"), Axon (formerly known as Taser International), Officer Joseph Darrehshoori, Officer Trent B. Wood, Officer Nathan Frazier, Officer Richard Antonio Hernandez, Officer Eric Silliman, Officer Manny Aguilar, Officer Donald Nowlin, Officer Mark Stokes, Officer Jerry Hanson, and Officer Steve Sandford (each officer was acting under the color of law in their individual capacities) and for cause of action would respectfully show as follows:

---

[1]Pursuant to  FRCP 15(a)(1)(B)

# I.   INTRODUCTION

1.     On May 31, 2016, Mr. Darrall Thomas ("Mr. Thomas") died while in the custody of the SV Police Department.  SV Officer Joseph Darrehshoori's improper and unreasonable use of a conducted electrical device ("CED") (hereinafter referred to as a "taser") caused the untimely death of Mr. Thomas.

2.     On May 31, 2016, Mr. Thomas was detained in a Briar Branch Creek  by officers from various Village police departments, including:  the CHV police department, the CMV police department, the SBISD police department, and the CSVV police department.

3.     The Briar Branch Creek was located behind the Village Veterinary Clinic at 8785 Gaylord Drive, Houston, Texas 77024 (the "Creek").[2]

4.     Dr. Michael Iliescue and a private Pathologist conducted an autopsy on Mr. Thomas.  The autopsy reported that Mr. Thomas had abrasions all over his body. Despite having abrasions all over Mr. Thomas' body, the doctors did not believe the abrasions caused his untimely death.   Indeed, Dr. Iliescue determined Mr. Thomas' death was accidental.  An independent autopsy is presently pending.

5.     At the time of his death, Mr. Thomas was twenty-one years old.  He was unmarried.  He stood at 6'0" tall and weighed 250 pounds.

---

[2] However, the emergency medical services ("EMS") arrived and found Darrell Thomas unresponsive at 8901 Gaylord Drive, Houston, TX 77024.

6.      Officer Darrehshoori used excessive and unreasonable force on Mr. Thomas when he tased him by using the Axon taser, but reasonably believe or otherwise allege that Mr. Thomas had threatened officers or others, resisted arrest, or otherwise tried to evade the arrest after Mr. Thomas voluntarily surrendered and was then handcuffed. Officer Wood witnessed the use of force, had the opportunity to prevent the use of force, and failed to stop Darrehshoori from using the Axon taser.

7.      Officers Darrehshoori and Officer Wood claim that they were dispatched to the Creek to investigate a crime. Accordingly, they arrived at the Creek to assist in Mr. Thomas—who was handcuffed at the time of their arrival—climb from the bottom of the steep hill to the top of the hill, where their police car was parked on the street.

8.      Officer Silliman arrived on the scene and assisted Officer Darrehshoori and Officer Wood in their efforts to help Mr. Thomas climb out of the Creek.  Later, the Village Fire Department arrived at the Creek. The parties that arrived on behalf of the Village Fire Department include: Don Swinner (captain), Erich Burrer (captain), David Langenberg (battalion chief), Cody Seymour (firefighter), Jose Montalvo (fire medic), Kyle Gruber (fire medic), Jason Kendall (fire medic),

Anthony Randolph (fire medic), Kory Young (fire medic), Kenny Macleod (operator), and Jordan Baker (operator).

9.     A fire medic, Kory Young, requested an officer to remove the handcuffs from Mr. Thomas.   As instructed, Officer Silliman removed the handcuffs from Mr. Thomas.

10.    Members of the Village Fire Department assessed the scene and made arrangements to remove Mr. Thomas from the incline of the hill using a stokes basket.[3]   According to Officer Darrehshoori's observation, Mr. Thomas was pulled out of the creek and onto flat ground by the paramedics.

11.    Mr. Thomas was then carried from the grass on the creek incline and placed on the ground by Officer Pineda, Officer Frazier, and Officer Darrehshoori.

12.    Mr. Thomas had been in custody as he was detained by CMV Police Department, the SBISD Police Department, the Village Fire Department, the CHV Police Department, and the Village Fire EMS at the time of his death on May 31, 2016.

---

[3] A stokes basket is commonly referred to as a rescue stretcher.  It is used for moving a patient to satisfy in certain rescue situations.

## II.   JURISDICTION AND VENUE

13.    This Court has jurisdiction over the Plaintiffs' federal claims, which arise under the Civil Rights Act of 1871 pursuant to 28 U.S.C. §§ 1331 and 1343, and supplemental jurisdiction over state law claims.

14.    Venue is proper under 28 U.S.C. § 1391 for two reasons.  Venue is proper because all Defendants in this action are residents of the United States District Court for the Southern District of Texas.   Venue is also proper because a substantial part of the events or omissions giving rise to the Plaintiffs' claims occurred in this judicial district—i.e., at 8785 Gaylord Drive, Houston, Texas 77024.  Therefore, venue is proper.

## III.   PARTIES

### A.   The Plaintiffs

<u>Lakita Carr</u>

15.    Lakita Carr ("<u>Ms. Carr</u>"), as a representative of the Estate of Darrall Thomas, brings this suit individually and for the benefit of her next of kin and heirs of the Estate of Darrall Thomas.   Ms. Carr is the mother of the deceased Mr. Thomas.   Ms. Carr is a resident of Harris County, Texas.   Mr. Thomas was a resident of Harris County, Texas at the time of his death.  Ms. Carr seeks to be

appointed administrator over Mr. Thomas' estate. She brings this action both in her individual and in her fiduciary capacities.

<u>Angelina Leffyear</u>

16.     Angelina Leffyear ("<u>Ms. Leffyear</u>"), as next friend for Darrell Thomas, the minor child of Mr. Thomas, brings this survivorship action and wrongful death action. Ms. Leffyear is a resident of Harris County, Texas. Darrell Thomas is also a resident of Harris County, Texas.

<u>Darrall Deonta Thomas, Jr.</u>

17.     Darrell Deonta' Thomas Jr., is the minor son and heir of the decedent, Mr. Thomas.

**B.     The Defendants**

<u>The City of Spring Valley Village (i.e., the CSVV)</u>

18.     The CSVV is a unit of local government organized under the laws of the State of Texas. The CSVV is a person under 42 U.S.C § 1983 and at all times relevant to this case as it acted under the color of law. The CSVV may be served with process at 1025 Campbell Road, Houston, Texas 77055 by service on the City Manager wherever he may be found.

The City of Memorial Village (i.e., the CMV)

19.    The CMV is a unit of local government organized under the laws of the State of Texas.  The CMV is a person under 42 U.S.C. § 1983 and at all times relevant to this case as it acted under the color of law.  The CMV may be served with process at by service on the city manager or wherever he  may be found.

The City of Hedwig Village (i.e., the CHV)

20.    The CHV is a unit of local government organized under the laws of the State of Texas.  The CHV is a person under 42 U.S.C § 1983 and at all times relevant to this case as it acted under the color of law. The CHV may be served with process service on the Hedwig Village Administrator, Kelly Johnson, or wherever she may be found.

The Spring Branch Independent School District (i.e., the SBISD)

21.    The SBISD is a unit of local government organized under the laws of the State of Texas.  The SBISD is a person under 42 U.S.C. § 1983 and at all times relevant to this case as it acted under the color of law.  The SBSID may be served with process by service on the superintendent wherever he may be found.

Axon

22.     Axon is a corporation organized under the laws of the State of Texas.   Axon is a person under 42 U.S.C. § 1983 and at all times relevant to this action as it acted under the color of law.  Axon may be served with process at 2 North Jackson Street, Suite 605, Montgomery, AL 36104 on its registered agent, CT Corporation System, or wherever it may be found.

CSVV Officer Joseph Darrehshoori

23.     Officer Darrehshoori is and was at all times relevant to this action duly-appointed police officer with the CSVV Police Department. Officer Darrehshoori is a person under 42 U.S.C. § 1983 and at all times relevant to this case as he acted under the color of law.   Officer Darrehshoori is sued in his individual capacity.   Officer may be served with process at 10910 Gold Point Drive, Apt. 705, Houston, 77064-7083, or wherever he may be found.

CSVV Officer Trent B. Wood

24.     Officer Wood is and was at all times relevant to this action a duly-appointed police officer with the CSVV Police Department.  Officer Wood is a person under 42 U.S.C. § 1983 and at all times relevant to this case as he acted under the color

of law.  Officer Wood is sued in his individual capacity.  Officer Wood may be served with process wherever he may be found.

CSVV Officer Carlos Pineda

25.    Officer Pineda is and was at all times relevant to this action a duly-appointed police officer with the CSVV Police Department.  Officer Pineda is a person under 42 U.S.C. § 1983 and at all times relevant to this case as he acted under the color of law.  Officer Pineda is sued in his individual capacity.  Officer Pineda may be served with process wherever he may be found.

CHV Nathan Frazier

26.    Officer Frazier is and was at all times relevant to this action a duly-appointed police officer with the CHV Police Department.  Officer Frazier is a person under 42 U.S.C. § 1983 and at all times relevant to this case as he acted under the color of law.  Officer Frazier is sued in his individual capacity.  Officer Frazier may be served with process at 7311 Raton Street, Houston, Texas 77055, or wherever he may be found.

CHV Officer Reginald Hernandez

27.    Officer Hernandez is and was at all times relevant to this action a duly-appointed police officer with the CHV Police Department.   Officer Hernandez is a person under 42 U.S.C. § 1983 and at all times relevant to this case

10

as he acted under the color of law.  Officer Hernandez is sued in his individual capacity.  Officer Hernandez may be served with process at 10300 Cypresswood Drive, Apt. 1425 Houston, Texas 77070, or wherever he may be found.

CHV Officer Steve Sandford

28.    Officer Sandford is and was at all times relevant to this action a duly-appointed police officer with the CHV Police Department.  Officer Sandford is a person under 42 U.S.C. § 1983 and at all times relevant to this case as he acted under the color of law.  Officer Sandford is sued in his individual capacity.  Officer Sandford may be served with process wherever he may be found.

CMV Sergeant Mark Stokes

29.    Sergeant Stokes is and was at all times relevant to this action a duly-appointed police officer with the CMV Police Department.  Sergeant Stokes is a person under 42 U.S.C. § 1983 and at all times relevant to this case as he acted under the color of law.   Sergeant Stokes is sued in his individual capacity.  Sergeant Stokes may be served with process wherever he may be found.

CMV Officer Donald Nowlan

30.    Officer Nowlan is and was at all times relevant to this action a duly-appointed police officer with the CMV Police Department.  Officer Nowlan is a person under 42 U.S.C. § 1983 and at all times relevant to this case as he acted

under the color of law.  Officer Nowlan is sued in his individual capacity.  Officer

Nowlan may be served with process wherever he may be found.

CMV Officer Eric Silliman

31.    Officer Silliman is and was at all times relevant to this action a

duly-appointed police officer with the CMV Police Department.  Officer Silliman

is a person under 42 U.S.C. § 1983 and at all times relevant to this case as he acted

under the color of law.  Officer Silliman is sued in his individual capacity.  Officer

Silliman may be served with process wherever he may be found.

SBISD Corp. Jerry Hanson

32.    Corp. Hanson is and was at all times relevant to this action a duly-appointed

police officer with the SBISD Police Department.  Corp. Hanson is a person under

42 U.S.C. § 1983 and at all times relevant to this case as he acted under the color

of law.   Corp. Hanson is sued in his individual capacity.  Corp. Hanson may be

served with process wherever he may be found.

SBISD Officer Jerry Williams Scott

33.    Officer Scott is and was at all times relevant to this action a duly-appointed

police officer with the SBISD Police Department.  Officer Scott is a person under

42 U.S.C. § 1983 and at all times relevant to this case as he acted under the color

of law.   Officer Scott is sued in his individual capacity.   Officer Scott may be served with process wherever he may be found.

## IV.   FACTS

32.    On May 31, 2016, at approximately 2:12 am, a silent alarm went off from an ATM at a Bank of America located at 8773 Katy Freeway, Houston, Texas 77024. The silent alarm was triggered because three men allegedly attempted to break into this ATM.    Accordingly,   this   silent   alarm   summoned   the   CSVV   Police Department, along with other police departments in the Villages.

33.    There were three men depicted in the ATM theft video, none of which was the decedent, Mr. Thomas.

34.    After the security alarms summoned law enforcement, Darrehshoori arrived on the location first.

35.    It is not clear how Mr. Thomas ended up in the area around Briar Branch Creek when he came across the path of Officer Darrehshoori, since he was not one of the thieves.

36.    No other officers were present at this time.

37.    Nevertheless it was he and Darrehshoori at the creek alone until Wood arrived.

38.     When Wood arrived at the creek Darrehshoori had his duty weapon drawn on Mr. Thomas. Wood drew his duty weapon and both officers began yelling commands ordering Mr. Thomas to come out of the creek with his hands up.

39.     Mr. Thomas was complying with the commands given by the officers. Darrehshoori holstered his duty weapon and unnecessarily  pulled out his taser in an effort to gain compliance, from Mr. Thomas who was already in compliance as evidenced by his cooperation. Officer Wood was also present when the taser was used as a means of non lethal deadly force.

40.     Mr. Thomas made it about 4 ft out of the creek water after the use of force by Darrenshoori and fell over face first on the creek embankment.

41.     While Mr. Thomas lay face first on the creek embankment Darrenshoori handcuffed him and search for weapons. In between catching his breath from the use of force and getting out of the creek Mr. Thomas identified himself .

42.     Subsequently, Mr. Thomas rolled over to his side. He was ordered to stand up and when he couldn't stand up the Officers forcefully tired to move him, but those attempts were unsuccessful.

43.     Officer Eric Silliman arrives at the creek at 2:19 am he gets into the creek and along with Darehshoori and Wood begins to try to force Mr. Thomas further out of the creek even though at this time Mr. Thomas could not get himself out of

the slick steep creek embankment while handcuffed, he was forced to try anyway which resulted in the numerous scratches and marks all over his body from his repeated attempts to stand on his own strength and with the assistance of officers.

44.     Officer Silliman removed the handcuffs from Mr. Thomas's hands believing it would help him traverse the steep incline. But Mr. Thomas could barely move at this point and couldn't make it up the incline on his own or with the assistance of the officers present.

45.     Mr. Thomas was lethargic at this point and could barely move let alone pull himself out of a creek bed with a steep incline.

46.     Without probable cause of any crime being committed, Darrehshoori placed Mr. Thomas under arrest.

47.     This interaction occurred near Briar Branch Creek located at 8785 Gaylord Drive, Houston, TX 77024.

48.     One of the two officers, Darrenshoori or Wood asked Mr. Thomas, "Darrall, who was all out there?"   In response to this inquiry, Mr. Thomas reply was inaudible; however, the officer's response was discernable.   Dissatisfied with this response by Mr. Thomas, The Officer then instructed to "toss him down that hill."

49.     Officer Darrehshoori using excessive and unreasonable force on Mr. Thomas tossed or allowed Mr.  Thomas to be tossed down the creek hill incline into the water.

50.     While Mr. Thomas was in the creek Officer Darrehshoori "effectively" used the Axon taser on Mr. Thomas, as indicated in his use of force report, which differs from  Officer Wood's report that it was ineffective, since it was not deployed.

51.     When Darrehshoori tasered Mr. Thomas, without reasonable belief or otherwise that Mr. Thomas was a threat to officers or others, resisted arrest, or otherwise tried to evade the arrest after Mr. Thomas voluntarily surrendered.

52.     Officer Silliman arrived on the scene and assisted Officer Darrehshoori and Officer Wood in their efforts to help Mr. Thomas climb out of the Creek.  Later, the Village Fire Department arrived at the Creek.   The parties that arrived on behalf of the Village Fire Department include:  Don Swinner (captain), Erich Burrer (captain), David Langenberg (battalion chief), Cody Seymour (firefighter), Jose Montalvo (fire medic), Kyle Gruber (fire medic), Jason Kendall (fire medic), Anthony Randolph (fire medic), Kory Young (fire medic), Kenny Macleod (operator), and Jordan Baker (operator).

53.   A fire medic, Kory Young, requested an officer to remove the handcuffs from Mr. Thomas.   As instructed, Officer Silliman removed the handcuffs from Mr. Thomas.

54.   Members of the Village Fire Department assessed the scene and made arrangements to remove Mr. Thomas from the incline using a stokes basket. According to Officer Darrehshoori's observation, Mr. Thomas was pulled out of creek and onto flat ground.

55.   Mr. Thomas was then carried from the grass and placed on the ground by Officer Pineda, Officer Frazier, Officer Hernandez and Officer Darrehshoori. Mr. Thomas was handcuffed, although experiencing a medical emergency.

56.   Mr. Thomas had been in custody of the CMV Police Department, the SBISD Police Department, the Village Fire Department, and the CHV Police Department at the time of his death on May 31, 2016, pending transportation to the hospital.

57.   Mr. Thomas was pronounced dead at 3:44 A.M..

58.   EMS took Mr. Thomas to Memorial Hermann Hospital.

59.   At Memorial Hermann Hospital, Mrs. Carr arrived shortly after hearing about the devastating news surrounding the events her son was involved in.

60.    She asked Dr. Tucco what happened to her son.  In response to this inquiry, Dr. Tucco pointed to CHV Officer Hernandez who stated he and other officers found him in that state.

61.    At the time of his arrest, Mr. Thomas was not under a physician's care for any medical issues or disabilities.   He did not have serious medical issues or pre-existing medical conditions prior to the date of his death.

62.    After Officer Darrehshoori tasered Mr. Thomas, while he was in the creek, Mr. Thomas told all parties present on the scene—namely, HV Police Department, CMV Police Department, SBISD Police Department, Hedwig Fire Department, Hedwig EMS personnel)—that he could not breathe.  Several reports written by the above-referenced parties and their agencies in the ordinary course of business corroborated that he indicated to them that he could not breathe.[4]  Despite these urgent pleas to stop and allow him to catch his breath or otherwise render aid caused by the unreasonable use of an Axon taser, the parties continued to try and force Mr. Thomas from the creek embankment when he could not stand up on his own without support and even with support he had trouble staying upright. Mr. Thomas only needed the opportunity to catch his breath.

---

[4] The Plaintiffs have obtained several reports each corresponding agency, including Houston Police Department (Homicide Division).  However, each report is filled with patently false contradictions of the events that transpired on the night of Mr. Thomas' death.

18

63.    While Mr. Thomas was in the custody of one or more of the Villages Police Department, he did not make any sudden movements, react violently to the officers or their requests, pose any threat of serious bodily injury or any other less severe harm, fail to follow officers' commands, or pose any immediate safety risk that warranted the use of a Axon taser to mitigate or otherwise cure the alleged threatened risk.  Furthermore, Mr. Thomas was obedient to all commands given by the officers.   Stated differently, he was neither hostile nor uncooperative rather fully compliant.

64.    None of the officers feared a threat of harm for themselves nor third parties based upon any acts conducted by Mr. Thomas.  Moreover, none of the officers feared for their safety or the safety of third parties based upon any acts conducted by Mr. Thomas.   At approximately 2:28 A.M., CSVV Officer Darrehshoori notified dispatch that all attempts to remove Mr. Thomas from the Creek had failed.

65.    Yet, on May 31, 2016, at 2:16 A.M., CSVV Officer Darrehshoori unjustifiably fired the taser at Mr. Thomas, and in doing so exercised excessive force against him.   Thomas surrendered to CSVV Officer Darrehshoori. Immediately upon surrender, Officer Dareshoori used unnecessary excessive force against Mr. Thomas when he tased him.

66.    At 2:33 A.M., Village Fire Department personnel arrived on scene to assist trying to get Mr. Thomas out of the Creek that he was pushed into by several officers.

67.    Over 20 minutes later, at 2:55 A.M., Mr. Thomas was pulled from the steep banks of the creek onto flat ground with the assistance of the Village Fire Department.

68.    According to the officers' records, at 3:01 A.M., the Village Fire Rescue arrived on scene to examine Mr. Thomas, who was handcuffed face down on the ground.  The EMS began asking him questions.  When he was unresponsive, the fire medic, Kory Young, stated, "He is not breathing."  The paramedics then placed Mr. Thomas on a backboard.

69.    The paramedics began performing CPR on Mr. Thomas at 3:07 A.M. Despite the paramedics' efforts, they determined that Mr. Thomas was not breathing and no pulse was detected.

70.    Mr. Thomas was rushed to Memorial Hermann Hospital at 3:13 A.M.  As they were on the way to the hospital, the paramedics conducted a bag ventilation after they intubated him.  At no time during the ride to the hospital was Mr. Thomas able to breathe on his own.

71.    The paramedics treated Mr. Thomas with Epi and Atropine as they were on the way to Memorial Hermann Hospital.

72.    Village Fire Rescue arrived at Memorial Hermann Hospital at 3:25 A.M. Mr. Thomas was pronounced dead by Dr. Mary Tocco at 3:44 A.M.  Use of an Axon taser device by CSVV Officer Darrehshoori was the proximate cause of Mr. Thomas' death.

**Taser Related Facts**

73.    At approximately 2:12 am on May 31, 2016, Defendant, Officer Darrehshoori used Taser Model X26& #39's against the body of Darrall Thomas. Darrehshoori then fired his tasers multiple times into Darrall Thomas. The Model X26 is manufactured by Axon ., formerly Taser International hereinafter, Axon.

74.    The Taser fires two small dart-like electrodes, each of which stays connected to the main unit by a conductive wire as they are propelled by small nitrogen charges. The electrodes are pointed to penetrate clothing and barbed to prevent removal once they are in place.

75.    The X26 is designed to pulse about 19 times a second through a five-second "cycle." Pulling and releasing the trigger fires the darts and initiates a five-second

cycle that can be terminated earlier by engaging the safety and repeated by pulling

the trigger again after a cycle ends. Cycles are prolonged when the user holds the

trigger longer than five seconds. The time and duration of each cycle is recorded

on a chip in the X26 called the "dataport," which can be downloaded to document

the time, number and duration of discharges.

76.    If the cartridge is removed, then pulling the Taser trigger cycles electricity

between two electrodes, which can then be pressed against a person's skin, causing

a painful burning sensation, a tactic known in law enforcement circles as a "drive

stun." Drive stuns can also be applied through an expended cartridge. For various

reasons, it is unsafe to repeatedly shock an individual.

77.    Axon has issued a training bulletin explaining that multiple applications may

impair breathing and respiration. See, Police Liability and Risk Management:

Torts, Civil Rights, and Employment Law, By Robert J. Girod, CRC Press, 2013,

page 114.

78.    Axon has warned of risks from repeated deployments. As recently as 2013,

Axon  and  Taser  International  and  other  taser  manufactures  have  warned,

"Drive-stun use may not be effective on emotionally disturbed persons or others who may not respond to pain due to a mind-body disconnect." See, Cheryl W. Thompson &amp; Mark Berman, Stun guns: 'There was just too much use,' Wash. Post, Nov. 27, 2015, at A1. Taser users, the  warning goes on, should "[a]void using repeated drive stuns on such individuals if compliance is not achieved." See, Armstrong v. The Village of Pinehurst, et.al., F.3d , Fourth Circuit, Jan. 11, 2016, No. 15-1191 (slip op., p. 21).

79.    Since at least 2011, the Police Executive Research Forum ("PERF") and the Department of Justice's Office of Community Oriented Policing Services ("COPS") have cautioned that using drive stun mode "to achieve pain compliance may have limited effectiveness and, when used repeatedly, may even exacerbate the situation." PERF &amp; COPS, 2011 Electronic Control Weapon Guidelines, at 14 (March 2011) (emphasis omitted). Id.

**POSITIONAL AND RESTRAINT ASPHYXIA**

80.    On the evening of May 31, 2016, the Defendants Darrehshoori worked together to apply physical force to Darrall Thomas that interfered his capacity to breathe and, ultimately, prevented him from breathing.

81.    When police officers restrain someone that they are arresting in such a strenuous manner as to prevent the person from breathing, it is often referred to in the medical and law enforcement community as restraint asphyxia.

82.    Restraint asphyxia can cause death; it is a form of deadly force.

When police officers restrain someone they are arresting or controlling in such a manner that the position of the person's body constrains or retards the person's capacity to breathe, it is referred to as positional asphyxia.

83.    Positional asphyxia can cause death. The risk that death can result from restraint asphyxia and positional asphyxia is well known within the law enforcement community.

84.    For example, not later than 2001 the Texas Commission on Law Enforcement and Georgia Bureau of Investigation produced a training video entitled "Preventing Restraint Asphyxia." The Video warned that excessive

restraint by officers when combined with conditions, such as a prolonged physical struggle and the mental condition of the person being arrested, can lead to restraint asphyxia.

85.    The Video warns if a struggle with person being arrested continues for longer than three minutes, there is a risk of in custody death.

86.    Officers are warned to avoid placing weight onto the back of the person being arrested because it can cut off the flow of oxygen to the lungs and are advised that once the person being arrested becomes less combative, the officer needs to reduce the use of force and advised that a drop in resistance might mean a loss of oxygen and consciousness. Officers are told that once the prisoner is under control, do not continue to compress the chest or leave the prisoner lying on their stomach.

87.    Beginning not later than July of 2006, the training manual used by the Texas Peace Officers Standards Training at TCOLE warned of the danger of positional asphyxia. Within that manual, trainees are warned to avoid positional asphyxia: when arresting someone, as soon as the person is handcuffed, they are to

get him off his stomach. And if the person continues to struggle while handcuffed, "do not sit on his back."

88.    Darrall Thomas is dead not simply because the Defendants used excessive force against him.

89.    Darrall Thomas is dead because the Defendants did not follow the well-known guidelines and warnings within the law enforcement community which are taught in order to avoid in custody death.

90.    Darrall Thomas is dead because Darrehshoori  did not apply the knowledge that any reasonably trained  officer has - to the effect that the prolonged constriction of the breathing capacity of a person can result in their death.

91.    Axon concedes that its taser producers deliver as much as 135 microcoulombs upon first impact.

92.    After a study, the Council on Science and Public Health raised concerns about the use of tasers.  It was determined that tasers fall into three general areas: (1) they are used too frequently and at lower levels on the use-of-force continuum than indicated; (2) appropriate training and supervision of taser use is lacking in some jurisdictions; and (3) tasers may contribute to the death of suspects, either

directly or indirectly.  It was important that the device be deployed according to an appropriate use-of-force policy and used in conjunction with a medically driven quality assurance process.

93.     CSVV Police Department is an agency within this jurisdiction that lacks the proper training and supervision of taser usage.  Similarly, CSVV officers are also an arm of this agency within this jurisdiction that lacks the proper training and supervision of taser usage by the Axon products, resulting in the unnecessary use of force as well as is one of the contributing factors to the death of Mr. Thomas.

94.     There was no need to administer force upon Mr. Thomas.  Thus, the use of the taser was unwarranted.  Mr. Thomas could not amulate on his own and EMS arrived to the scene to assist in pulling Thomas up the embankment, while he was strapped into a stokes basket.

95.     Once the various offices pulled Mr. Thomas to the top of the embankment, he was rolled to his chest by CHV Officer Hernandez, placed in double handcuffs, and rolled onto his back.  Indeed, CHV Officer Hernandez reported that no force was used to restrain Darrell Thomas, which directly contradicts the reports of the other parties.

96.    Mr. Thomas continued to complain that he experienced difficulty breathing. He was then rolled onto his stomach.   Subsequently, according to the autopsy report, the officers double handcuffed Mr. Thomas in the front of his body.

97.    Officer Darrehshoori failed to disclose to the medical professionals on the scene that he used a taser on Mr. Thomas.  This omission resulted in the delay and denial of necessary, appropriate, and reasonable medical care.

98.    Although the Officers believed that Mr. Thomas suffered from an asthma attack, the Defendants failed to disclose this information to EMS and other medical personnel.

99.    The Village Fire and Rescue was not informed by any of the officers present on the scene— including CHV Officer Frazier, CHV Officer Hernandez, CMV Officer Stokes, CMV Officer Nowlin, Officer Aguilar—of any alleged asthma or breathing problems, resulting in the delay and denial of medical care.

100.    The Defendants' acts and omissions with respect to use of force was: (1) deliberately indifferent, (2) violated Mr. Thomas' Fourth Amendment right to be free from unusual punishment as a pre-trial detainee, and (3) violated Mr. Thomas' due process of law rights that are guaranteed by the Fourteenth Amendment.

101.    Within the practice and policies of the CSVV Police Department (by and through the officers employed by this agency):   (1)   the Defendants failed to

disclose (and concealed) the use of force (whether physically or by use of the Axon taser); and (2) CSVV's policies and procedures to conceal use of force, resulting in the delay denial of medical care and also caused Mr. Thomas' death.

102.   The Village Fire Department stated that any claim of asthma attacks suffered by Mr. Thomas was not revealed to them until after he was pronounced dead, this is not true as it relates to breathing issues.

103.   Although Mr. Thomas was in serious need of medical care after he was tased, various officers detained and restrained Mr. Thomas with handcuffs until fire medic, Kory Young requested the handcuffs be removed.

104.   Mr. Thomas was initially handcuffed by Officer Darrenshoori of CSVV Police Department, and stated in report initial handcuffs were removed by Kory Young.

105.   Following the initial removal of handcuffs, Mr. Thomas was again placed in handcuffs while still in Briar Branch Creek.

106.   Handcuffs were again taken off of Mr. Thomas by CMV Officer Silliman at the Village Fire Department's request.

107.   Once out of the creek, CHV Officer Hernandez and CHV Officer Frazier placed Mr. Thomas in handcuffs, delaying medical care, until ordered by paramedics that they be removed for medical care.

108.  To date it is unknown what happened to his pants and underwear, the property whereabouts are unknown and never made with him to the hospital and never released to his family.

109.  What is known is that he defecated and soiled his under pants according to officer Hernandez and Sgt Collins during his investigation, this facts was never indicted any any other reports from officers on the scene.

110.  Ratification by the City of Spring Valley Village, the City of Memorial Village, the City of Hedwig Village, the Spring Branch Independent School District, collectively referred to as the "Villages" occured when after a meaningful investigation by each department's Internal affairs, Houston Police Department and the District Attorney and the Villages each were able to review said reports not one municipality discipled any officer due to the unconstitutional conduct that occurred, namely excessive force by tasering, Mr. Thomas down the hill, by the Spring Valley Village Officers Darrehshoori, and tossing Mr. Thomas down the hill by Darrehshoori and Wood, and Officers Eric Silliman, Donald Nowlan, Mark Stokes, Jerry Hanson, Jerry Williams Scott, Steve Sandford, Reginald Hernandez, Nathan Frazier, Carlos Pineda caused the delay in medical  Care.

## V.     Claims For Relief

## Count 1:  Negligence

111.   The Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as if set forth at length herein in this section.

112.   Plaintiffs bring the following negligence claims under the general negligence, products liability claim, against Defendants, Axon, CSVV Officer Darrehshoori, in his individual capacity and CSVV Officer Wood, in his individual capacity, jointly and severally; and, against Defendants, CSVV and CSVV Officer Darrehshoori, in his individual capacity and CSVV Officer Wood, and in his individual capacity under § 101.023 of the Texas Tort Claims Act, jointly and severally.

113.   The taser, a product manufactured by Axon and used by CSVV Officer Darrehshoori, in his individual capacity, and CSVV Officer Wood, in his individual capacity  caused injury to Mr. Thomas due to:  ( 1) the officers' foreseeable misuse of the product, (2) Axon's inadequate training of the officers and cities,  (3) and poor supervision of the use of the product by Axon.

114.   SBISD, CSVV Officer Darrehshoori, in his individual capacity, and CSVV Officer Wood, and in his individual capacity, are liable under § 101.023 of the Texas Tort Claims Act, jointly and severally based on the negligent use of the tangible property  (i.e., the tasers) of the City of Spring Branch Village, resulting in

the cardiac arrest and death of Mr. Thomas. Notice is not required when actual notice is provided.

## Count 2:  Wrongful Death

115.  The Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as if set forth at length herein in this section.

116.  The Plaintiffs bring this wrongful death action pursuant to the Texas Civil Practice and Remedies Code § 71.004 (c).

117.  Pursuant to Texas Civil Practice and Remedies Code § 71.002, and Texas statutory and common law, the Defendants are liable for their actions and omissions and their employee's actions omissions, including, without limitation, their agents and officers.

118.  Mr. Thomas died as a result of the Defendants' deliberate indifference, reckless,  wrongful acts and omissions, neglect, and carelessness actions.

119.  Mr. Thomas would have been entitled to bring this action against Defendants if he had lived.

120.  A reasonable and competent member of the law enforcement profession would have exercised under similar circumstances duties to:

    a.  Refrain from the use of excessive force, provide adequate medical care, not impose cruel and unusual punishment;

    b.  Exercise ordinary or reasonable care;

    c.  Exercise the degree of care, skill, and competence that a reasonable officer would exercise.  The Defendants breached all of their duties.

121.  The Defendants' acts and omissions, jointly and severally, proximately caused injury and death to Mr. Thomas.

122.  The Plaintiffs seek unliquidated damages within the jurisdictional limits of this Court.

Count 3:  Survival Claim

123.  The Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as if set forth at length herein in this section.

124.  Pursuant to Texas Civil Practice and Remedies Code § 71.021 and Texas statutory and common law, the Defendants are liable for their actions and omissions and their employee's actions omissions, including, without limitation, their agents and officers.

125.  Mr. Thomas had causes of action for personal injury to his person under the Texas Tort Claim Act, negligence statute, and 42 U.S.C. § 1983 before he died.

126.   Mr. Thomas would have been entitled to bring an action for the injury if he had lived, namely pain and suffering, as a result of the negligence and civil rights violations.

127.   The Defendants' wrongful acts and omission, jointly and severally, caused Mr. Thomas's injuries for which the Plaintiffs sue for all damages allowed by law.

### Count 4:  42 U.S.C. § 1983

128.   The Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as if set forth at length herein in this section.

129.   This suit is brought pursuant to 42 U.S.C. § 1983, which is entitled the Civil Rights Act.  The critical language of the Civil Rights Act sets forth, in part:

*Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.*

<u>Fourteenth and Fourth Amendments:  Due Process, Excessive Force, and Inadequate Medical Care</u>

130.   On May 31, 2016, these officers were acting under the color of state law when unreasonably detained and subsequently tased Mr. Thomas with an Axon taser device, without proper reason or authority, without reasonable or probable cause and with deliberate indifference to the rights of Mr. Thomas.

131.   At all times relevant hereto, Plaintiff had an inalienable and fundamental liberty interest protected by the Constitution.

132.   Mr. Thomas had the right to be free from the use of excessive force. The Villages and the  CSVV Officer Darrehshoori and CSVV Officer Wood acted jointly and severally to violate Mr. Thomas' right to be free from excessive force because each officer promoted, adopted, and the above-referenced entities which all promulgated a policy of allowing its arresting officers to utilize excessive force through the Axon taser device when  arresting and for assisting officers not interfering to prevent other officers from engaging in use of excessive force.

133.   The Defendants, under the color of law, deprived Mr. Thomas of his civil rights, despite their knowledge regarding Mr. Thomas':  (1) obedience to all commands;  (2) compliance of all orders;  (3) non-resistance;  (4) voluntary surrender to the officers; and (5) non-evasion of arrests.

134.   The CHV, the SBISD, the CMV, and the CSVV officials collectively  drew or must have drawn the inference that Mr. Thomas' constitutional right to be free

from excessive force was secondary to the desires of the violators of the constitutional rights of others through county policy, procedure, custom, or practice to encourage officers, such as CSVV Officer Wood, who refused to intervene when CSVV Officer Darrehshoori was clearly engaging in excessive force.

135.   The CHV, the SBISD, the CMV, and the CSVV were aware that CSVV Officer Darrehshoori used excessive force relating to the apprehension of Mr. Thomas.

136.   The CHV, the SBISD, the CMV, and the CSVV officials drew or must have drawn the inference that Mr. Thomas had an urgent need for medical care contemporaneously and immediately after the use of the excessive force by the Axon taser.  His urgent need for care was obvious even afterwards because third parties (including the fire medics/paramedics observed him saying that he could not breathe.

137.   The CHV officials drew or must have drawn the inference that Mr. Thomas required immediate medical care.

138.   Therefore, CSVV knew of and deliberately disregarded an SUBSTANTIAL OR EXCESSIVE excessive risk of harm to Mr. Thomas' right to be free from excessive force by adopting the actions of its CSVV Officer Darrehshoori.

139.   The Defendants' adopted  and promoted  a policy and practice to allow its officers to also  be deliberately indifferent to Mr. Thomas's constitutional right to be free from excessive force.

140.   The Defendants' acts are repugnant to the conscience of mankind, thereby exposing the Defendants' to liability.

141.   The Defendants, the Villages and the Villages PD (and their officials and agents),   are responsible for Mr. Thomas's injuries because the Villages Police Department are official policy-makers who were sufficiently aware that its supervision and training policies, were defective, incomplete, or routinely ignored by its officers (and other parties within their respective agencies) to the extent that they facilitated or permitted the excessive force against Mr. Thomas.

142.   The CHV, the CSVV, the SBISD, the CMV were aware of facts from which they drew (or should have drawn) an inference that there was a substantial risk of serious harm to Mr. Thomas or someone similarly situated.

143.   The CHV, the CSVV, the SBISD, the CMV actions—in promoting the excessive force against Mr. Thomas—affirmatively demonstrates a custom, policy, or procedure of excessive force, and deliberate indifference.

144.   The CHV, the CSVV, the SBISD, the CMV are liable because they all had policies, procedures, or customs of ignoring the obvious constitutional violations, namely excessive force by use of tasers.

145.   CSVV Officer Wood is liable because he was deliberately indifferent to Mr. Thomas' constitutional right to be free from excessive force when he stood by and allowed the excessive force by CSVV Officer Darrehshoori to occur and continue without intervening.

146.   Defendant Darrehshoori is liable because he was deliberately indifferent to Mr. Thomas's constitutional right to be free from excessive force.

147.   Mr. Thomas was denied adequate medical care by the Defendants after he indicated that he could not breathe and the Defendants failed to administer any type of mitigating aid (such as CPR).  Instead, they handcuffed Mr. Thomas, which contributed to his injuries and damages, and ultimately was the start of the chain of events that resulted in his untimely death.   No officer performed CPR or administered any type of medical aid to Mr. Thomas while waiting on the arrival of the paramedics.   Moreover, they waited approximately 10 minutes to call the paramedics.  Indeed, the delay in providing CPR was a proximate and contributing cause to Mr. Thomas's injuries and resulting death, as well as, failing to inform the medical personnel that Thomas had been tased.

<u>Equal Protection</u>

148.   The police departments in the Villages have a culture of targeting and profiling African American (i.e., black) people in the Village communities.  A high ranking officer with CMV Police Department, a lieutenant was accused of making discriminating comments relating to black people coming in the "villages" that do not belong in the area, in a sworn affidavit.  Black people are more likely to be racially profiled, tased, shot, or killed by law enforcement than non-blacks in the Village communities for no criminal offense or minor infractions. Darrell Thomas was black.

<u>Monell Claims</u>

149.   The Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as if set forth at length herein in this section.

150.   As result of The CHV, the CSVV, the SBISD, the CMV's customs, policies, and practices it encourages the above constitutional violations, and is thereby the moving force behind, the type of misconduct at issue by failing to adequately train, supervise, control and discipline its officers, including CSVV Officer Darrehshoori and CSVV Officer Wood, such that its failure to do so manifests deliberate indifference by such officers.

151.   As a matter of custom, policy, and practice, the SBISD, the CMV, the CHV, and the CSVV all facilitate the very type of misconduct at issue by failing to adequately investigate, punish, train, and discipline prior instances of similar misconduct, thereby leading the Villages police officers to believe their actions will never be meaningfully scrutinized or otherwise punished.

152.   Generally, as a matter of widespread practice so prevalent as to comprise municipal policy, officers of the CSVV, the CHV, the SBISD, and the CMV violated the constitutional rights of individuals in a manner like that alleged by Mr. Thomas, herein, on a regular basis, yet the CHV, the SBISD, the CMV, and the CSVV investigates officer misconduct and makes findings of wrongdoing in a disproportionately only a small number of cases.

153.   Due to the CSVV, the CHV, the SBISD, and the CMV's policies and practices, and the unjustified and unreasonable conduct of CSVV Officer Darrehshoori CSVV Officer Wood, the Plaintiff suffered physical injuries, resulting in his untimely death.

154.   The misconduct by the defendants described herein was objectively unreasonable and undertaken with willfulness and reckless indifference to the rights of others.   In addition, the misconduct and excessive force described in the misconduct and excessive force described herein "shocks the conscience."

Failure to Supervise and Failure to Train

155.   The Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as if set forth at length herein in this section.

156.   The Defendants are liable under 42 U.S.C. § 1983 for failing to supervise and train its police officers and for overlooking and covering up officer misconduct.   In addition, the Defendants each and collectively have a general policy, pattern, and/or practice of not disciplining police officers for their misconduct, thereby sanctioning the police officers' actions, which amounted to a departmental policy of overlooking constitutional violations.   The Defendants'' failure to supervise and train its police officers, and the Defendants'' willful blindness towards the constitutional violations of its employees and agents, constitute gross negligence and/or deliberate and conscious indifference to people's rights (including Mr. Thomas's rights).

157.   The CSVV and Axon failed to supervise and train the officers of CSVV Police Department on the use of the tasers on persons (especially in circumstances where the individual or individuals are compliant, non-threatening, and subject to further or any unanticipated injuries) based on the location of the use of force (i.e., near a creek) on the person or the premises.

158.   Additional and consistent training or supervision will prevent injuries sustained by persons in the Villages community (like the injuries sustained by Mr. Thomas), including cardiac arrest, plus the injury to his lungs occurring from the untrained and unsupervised actions and omissions of the Village officers.

159.   Each of the above listed acts and/or omissions, taken singularly or in any combination, rise to the level of gross negligence.   The Defendants' acts and omissions, when viewed objectively from the standpoint of the actor at the time of its occurrence, involved an extreme degree of risk, considering the probability and magnitude of harm to Mr. Thomas and others.   The Defendants had actual and subjective awareness of the risk involved, but nevertheless proceeding with conscious indifference to the rights, safety, or welfare of others.   Therefore, the Defendants were grossly negligent, for which the Defendants are liable for exemplary damages.

160.   As a proximate result of the negligence and/or gross negligence of the Defendants, Mr. Thomas was caused to suffer injuries, damages, and death.

161.   The Defendants, Darrehshoori and each of them, breached the Fourth Amendment's  prohibition against unreasonable seizures by engaging in the use of excessive force upon Darrall Thomas which resulted in his harm and his death.

162.   The Defendants, and each of them, violated Darrall Thomas's affirmative rights as guaranteed by the Constitution and laws of Texas - rights to be free from abuse while in custody and to be free from unjustified force.

**Qualified Immunity**

163.   Not later than the point in time at which the Defendants had Darrall Thomas "face down" and securely held in their grasp, he was effectively immobilized and posed no immediate threat to the Defendants or others.

164.   At all times pertinent hereto the law was clearly established that the repeated use of a Taser on a person who has been taken into custody after his physical capitulation to the officers is constitutionally unreasonable. [5]

165.   At all times pertinent hereto, the law is clearly established that a person who has been handcuffed, who was not a flight risk and who is not an active threat to the arresting officers is not to be subjected to violent force. [6]

### VII.   Jury demand

166.   The Plaintiffs demand a trial by jury on all issues triable to a jury.

### VIII.  Damages

---

[5] Oliver v. Fiorino, 586 F.3d 898 (11th Cir. 2009).

[6] Lee v. Ferraro, 284 F.3d 1188 (11th Cir. 2002).

167.   The Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as if set forth at length herein in this section.   The Plaintiffs respectfully request this Court to:

168.   Find that Plaintiffs are the prevailing party in this suit at bar and award attorneys' fees under 42 U.S.C. § 1988, expert fees, and court costs pursuant to state and federal law.

169.   Find that the Defendants, jointly and severally, are the non-prevailing party.

170.   Award actual damages to Plaintiffs for the violations of Mr. Thomas's Constitutional rights.

171.   Award prejudgment and post-judgment interest.

172.   Award pain and suffering damages to the Plaintiffs

173.   Award emotional distress damages to the Plaintiffs.

174.   Award loss of companionship, support and consortium,   damages to the Plaintiffs.

175.   Award exemplary damages to the Plaintiffs. All individuals sued are liable for punitive damages as they were deliberately indifferent to Mr. Thomas's constitutional rights and they did the acts knowingly, such acts, include recklessly striking Mr. Thomas with a taser after pushing him in the creek.  These acts being extreme and outrageous and shocking to the conscious.

## IX.   Attorneys' Fees

176.   After prevailing herein, the Plaintiffs are entitled to recover reasonable and necessary attorneys' fees and costs to enforce his Constitutional rights under 42 U.S.C. §§ 1983 and 1988 from the Defendants, as the prevailing parties.

## X.   Prayer for Relief

177.   For the reasons set forth herein, the Plaintiffs respectfully request that the Defendants be cited to appear and answer herein, and that the Plaintiffs have a final judgment against the Defendants for actual damages above the jurisdictional minimum of the Court, compensatory damages above the jurisdictional minimum of the Court, nominal damages above the jurisdictional minimum of the Court , exemplary damages as allowed by law, funeral expenses, pain and suffering damages above the jurisdictional minimum of the Court, pre-judgment and post-judgment interests, costs of court, attorneys' fees and expenses, and all other relief to which the Plaintiffs are justly entitled, at law or in equity.

Respectfully submitted,
By:/s/U.A. Lewis
The Lewis Law Group
U.A. Lewis
SBN: 24076511
FBN: 1645666
P.O. Box 27353
Houston, TX 77227
Phone: (713) 570-6555
Fax: (713) 581-1017
MyAttorneyAtLaw@gmail.com
Attorney for the Plaintiffs