IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

LAKITA CARR, INDIVIDUALLY AND §
AS REPRESENTATIVE OF THE ESTATE §
OF DARRALL THOMAS, AND ANGELINA §
LEFFYEAR, AS NEXT FRIEND FOR §
D.T., JR., §
§
Plaintiffs, §
§
v. § CIVIL ACTION NO. H-18-2585
§
THE CITY OF SPRING VALLEY §
VILLAGE, THE CITY OF HEDWIG §
VILLAGE, MEMORIAL VILLAGE, §
AXON (FORMERLY TASER §
INTERNATIONAL), JOSEPH §
DARREHSHOORI, IN HIS INDIVIDUAL §
CAPACITY, TRENT B. WOOD, IN §
HIS INDIVIDUAL CAPACITY, §
NATHAN FRAZIER, IN HIS §
INDIVIDUAL CAPACITY, RICHARD §
ANTONIO HERNANDEZ, IN HIS §
INDIVIDUAL CAPACITY, CARLOS §
PINEDA, IN HIS INDIVIDUAL §
CAPACITY, ERIC SILLIMAN, IN §
HIS INDIVIDUAL CAPACITY, §
MANNY AGUILAR, IN HIS §
INDIVIDUAL CAPACITY, DONALD §
NOWLIN, IN HIS INDIVIDUAL §
CAPACITY, MARK STOKES, IN §
HIS INDIVIDUAL CAPACITY, §
JERRY HANSON, IN HIS §
INDIVIDUAL CAPACITY, AND §
STEVE SANDFORD, IN HIS §
INDIVIDUAL CAPACITY, §
§
Defendants. §

## MEMORANDUM OPINION AND ORDER

Plaintiff, Lakita Carr ("Carr"), brings this action

individually and as representative of the Estate of Darrall Thomas,

and plaintiff, Angelina Leffyear, brings this action as Next Friend

for D.T., Jr., against defendants, the City of Spring Valley Village ("CSVV"), the City of Memorial Village ("CMV"), the City of Hedwig Village ("CHV"), the Spring Branch Independent School District ("SBISD"), Axon (formerly Taser International), and, in their individual capacities, CSVV officers Joseph Darrehshoori ("Darreshoori"), Trent B. Wood ("Wood"), and Carlos Pineda ("Pineda"), CMV Sergeant Mark Stokes ("Stokes"), CMV Officers Donald Nowlin ("Nowlin") and Eric Silliman ("Silliman"), CHV officers Nathan Frazier ("Frazier"), Richard Antonio (a/k/a/ Reginald) Hernandez ("Hernandez"), and Steve Sandford ("Sandford"), SBISD Corporal Jerry Hanson ("Hanson"), SBISD Officer Scott Williams, and Manny Aguilar,[1] for violation of civil rights guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution under 42 U.S.C. § 1983, and for negligence, wrongful death, and survival claims under state law arising from the May 31, 2016, death of Darrall Thomas ("Thomas").

Pending before the court are the Motion to Dismiss of Defendants Spring Branch Independent School District, Scott Williams, and Jerry Hanson ("SBISD Defendants' MD")(Docket Entry

---

[1]The caption on both Plaintiffs' Original Petition (Docket Entry No. 1-1), and Plaintiffs' Amended Complaint (Docket Entry No. 6), name an additional defendant, Manny Aguilar, but Manny Aguilar is not identified as a party defendant in the section titled "Parties" of Plaintiffs' Amended Complaint, Docket Entry No. 6, pp. 6-12 ¶¶ 15-31. Manny Aguilar is, however, listed as a defendant in Plaintiffs Lakita Carr et. al.'s Certificate of Interested Parties, Docket Entry No. 14, p. 4 ¶ 21. All page numbers for docket entries in the record refer to the pagination inserted at the top of the page by the court's electronic filing system, CM/ECF.

No. 7), and Defendants' Carlos Pineda, Stephen Sanford, Eric Silliman, Donald Nowlin, City of Hedwig Village and City of Spring Valley Village Motion to Dismiss Claims Asserted in Plaintiffs' Amended Complaint ("Defendants' MD") (Docket Entry No. 8). Also pending are Plaintiffs' Response to Defendants' Spring Branch Independent School District's, Scott Williams's, and Jerry Hanson's Motion to Dismiss (DKT. #7) ("Plaintiffs' Response to SBISD Defendants' MD)(Docket Entry No. 9), and Plaintiffs' Response to Defendants Carlos Pineda, Stephen Sanford, Eric Silliman, Donald Nowlin, City of Hedwig Village, and City of Spring Valley Village Motion to Dismiss [DKT. #8] (Plaintiffs' Response to Defendants' MD)(Docket Entry No. 10), in which plaintiffs argue the adequacy of their pleadings and request leave to amend should the court disagree. For the reasons explained below, defendants' motions to dismiss will be granted, plaintiffs' requests to amend will be denied, and this action will be dismissed with prejudice against the defendants who have filed motions to dismiss and without prejudice against all the other defendants.

## I.  **Standard of Review**

Defendants seek dismissal of all the claims asserted against them under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for which relief may be granted.[2]  Under Rule 8 of

---

[2]Defendants' MD, Docket Entry No. 8, p. 1.

the Federal Rules of Civil Procedure, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Rule 12(b)(6) motion tests the formal sufficiency of the pleadings and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001). The court must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. Id. To defeat a motion to dismiss pursuant to Rule 12(b)(6) a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Twombly, 127 S. Ct. at 1965). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 127 S. Ct. at 1965). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief." Id. (quoting Twombly, 127 S. Ct. at 1966). Moreover, the court does not accept as true legal conclusions. Id. at 1950.

## II.  **Plaintiffs' Factual and Legal Allegations**

Plaintiffs allege that on May 31, 2016, at 2:12 a.m., a silent alarm went off at the Bank of America at 8773 Katy Freeway, Houston, Texas 77024, when three men tried to break into an ATM. Officers from four different police departments responded to the silent alarm: CSVV, CMV, CHV, and SBISD.[3]  The first response was by CSVV Officer Darrehshoori who encountered Thomas in the area of Briar Branch Creek.[4]  The second response was by CSVV Officer Wood who arrived at the creek to find Darrehshoori with his duty weapon drawn on Thomas.[5]  Plaintiffs allege that Wood drew his duty weapon, that he and Darrehshoori commanded Thomas to come out of the creek with his hands up, and that as Thomas started to comply, Darrehshoori holstered his weapon and drew his taser.[6]  Plaintiffs allege that one of the two officers asked Thomas who else was out there, and that, dissatisfied with Thomas' response, one of the officers instructed the other to "toss him down that hill."[7]

---

[3]Plaintiffs' Amended Complaint, Docket Entry No. 6, p. 13 ¶ 32.

[4]Id. ¶¶ 35-36.  See also id. at 15 ¶ 47 ("This interaction occured near Briar Branch Creek located at 8785 Gaylord Drive, Houston, TX 77024.").

[5]Id. at 14 ¶ 38.

[6]Id. ¶¶ 39-40.

[7]Id. at 15 ¶ 48.

Plaintiffs allege that "Officer Darrehshoori using excessive and unreasonable force on Mr. Thomas, tossed or allowed Mr. Thomas to be tossed down the creek hill incline into the water,"[8] and that at 2:16 a.m., while Thomas was in the creek, Darrehshoori used his Axon taser on Thomas.[9]   Plaintiffs allege that after he was tased, Thomas made it about 4 feet out of the creek water and then fell face first onto the embankment,[10] and that while Thomas lay face first on the embankment, Darrehshoori handcuffed Thomas and searched him for weapons.[11] Plaintiffs allege that at 2:19 a.m. CMV Officer Silliman arrived and together with Darrehshoori and Wood tried to force Thomas up the steep, slippery embankment,[12] but that at 2:28 a.m. Darrehshoori notified dispatch that all attempts to remove Thomas from the creek had failed.[13]

---

[8] Id. at 16 ¶ 49.

[9] Id. at 16 ¶ 50, 18, ¶ 62, and 19 ¶ 65.  But see also id. at 21 ¶ 73 (alleging that "[a]t approximately 2:12 am on May 31, 2016, Defendant, Officer Darrehshoori used Taser Model X26&#39's against the body of Darrall Thomas.  Darrehshoori then fired his tasers multiple times into Darrall Thomas.  The Model X26 is manufactured by Axon, formerly Taser International, hereinafter, Axon.")

[10] Id. at 14 ¶ 40.

[11] Id. ¶ 41.

[12] Id. at 4 ¶ 8, and 14 ¶ 43.

[13] Id. at 19 ¶ 64.

Plaintiffs allege that at 2:33 a.m. the Village Fire Department arrived with an eleven-man team that included 5 fire medics, and one of them, Kory Young, asked for Thomas' handcuffs to be removed, and that Silliman removed the handcuffs.[14] Plaintiffs allege that after assessing the scene, members of the Village Fire Department arranged to remove Thoms from the incline using a stokes basket.[15] Plaintiffs allege that while he was in the creek, "Thomas told all parties present on the scene — namely, [C]HV Police Department, CMV Police Department, SBISD Police Department, Hedwig Fire Department, Hedwig EMS personnel[] — that he could not breathe."[16] Plaintiffs allege that at 2:55 a.m., Thomas was pulled from the banks of the creek, placed on the ground by CSVV Officers Darrehshoori and Pineda and CHV Officers Frazier and Hernandez,[17] and placed in handcuffs by Hernandez and Frazier even though he was experiencing a medical emergency.[18]

Plaintiffs allege that at 3:01 a.m. Village Fire Rescue arrived to examine Thomas who was handcuffed face down on the ground, that when questioned Thomas was unresponsive, and that fire

---

[14]Id. at 4 ¶ 8, 16-17 ¶¶ 52-53, and 20 ¶ 66.

[15]Id. at 5 ¶ 10, and 17 ¶ 54.

[16]Id. at 18 ¶ 62.

[17]Id. at 17 ¶ 55, and 20 ¶ 67.

[18]Id. ¶ 55, and 29 ¶ 107.

medic Kory Young stated, "He is not breathing."[19]  Plaintiffs allege

that paramedics began performing CPR on Thomas at 3:07 a.m., rushed

Thomas to the hospital at 3:13 a.m., and that during the ride

Thomas was intubated for bag ventilation and treated with Epi and

Atropine but was unable to breath on his own.[20]  At 3:25 a.m. Thomas

arrived at Memorial Hermann Hospital, and at 3:44 a.m. he was

pronounced dead.[21]

Plaintiffs allege that Darrehshoori failed to disclose to the

medical responders that he shot Thomas with his taser, that the

other officers, in particular, CHV Officers Frazier and Hernandez,

and CMV Officers Stokes, Nowlin, and Aguilar, failed to inform the

medical personnel that Thomas complained of breathing problems, and

that these omissions resulted in the delay and denial of necessary,

appropriate, and reasonable medical care.[22]  Plaintiffs allege that

after conducting internal investigations, and reviewing

investigative reports of the Houston Police Department and the

Harris County District Attorney's Office, none of the local

government defendants, i.e., CSVV, CHV, CMV, and SBISD, disciplined

their officers for the events at issue and, instead, ratified

---

[19]Id. at 20 ¶ 68.

[20]Id. at 20-21 ¶¶ 69-71.

[21]Id. 17 ¶¶ 57-58, and 21 ¶ 72.

[22]Id. at 28 ¶¶ 97-98.

the unconstitutional conduct that occurred, namely excessive force by tasering Mr. Thomas . . . by the Spring Valley Village Officer[] Darrehshoori, and tossing Mr. Thomas down the hill by Darrehshoori and Wood, and Officers Eric Silliman, Donald Nowlan, Mark Stokes, Jerry Hanson, Jerry Williams Scott, Steve Sandford, Reginald Hernandez, Nathan Frazier, Carlos Pineda caused the delay in medical care.[23]

Plaintiffs assert claims for (1) negligence under § 101.023 of the Texas Tort Claims Act, against defendants Axon, SBISD, CSVV, and CSVV Officers Darrehshoori and Wood, in their individual capacities, jointly and severally;[24] (2) wrongful death pursuant to §§ 71.002 and 71.004(c) of the Texas Civil Practices and Remedies Code, against all defendants;[25] (3) survival claims pursuant to § 71.021 of the Texas Civil Practices and Remedies Code against all defendants;[26] and (4) claims for violation of civil rights guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution under 42 U.S.C. § 1983 based on excessive use of force and inadequate medical care against all defendants.[27]

---

[23]Id. at 30 ¶ 110.

[24]Id. at 30-32 ¶¶ 111-14.

[25]Id. at 32-33 ¶¶ 115-22.

[26]Id. at 33-34 ¶¶ 123-27.

[27]Id. at 34-43 ¶¶ 128-65.

# III. **Analysis**

Plaintiffs allege that

> [o]n May 31, 2016, the[] [defendant] officers were acting
> under color of state law when [they] unreasonably
> detained and subsequently tased Mr. Thomas with an Axon
> taser device, without proper reason or authority, without
> reasonable or probable cause and with deliberate
> indifference to the rights of Mr. Thomas,[28]

that

> [t]he Villages and the CSVV Officer Darrehshoori and CSVV
> Officer Wood acted jointly and severally to violate
> Mr. Thomas' right to be free from excessive force because
> each officer promoted, adopted, and the above-referenced
> entities which all promulgated a policy of allowing its
> arresting officers to utilize excessive force through the
> Axon taser device when arresting and for assisting
> officers not interfering to prevent other officers from
> engaging in use of excessive force,[29]

and that "[t]he Defendants, Darrehshoori and each of them, breached
the Fourth Amendment's prohibition against unreasonable seizures by
engaging in the use of excessive force upon Darrall Thomas which
resulted in his harm and his death.[30]  Plaintiffs' allege that

> [t]he CHV, the SBISD, the CMV, and the CSVV officials
> drew or must have drawn the inference that Mr. Thomas had
> an urgent need for medical care contemporaneously and
> immediately after the use of the excessive force by the
> Axon taser.  His urgent need for care was obvious even
> afterwards because third parties (including the fire
> medics/paramedics observed him saying that he could not
> breathe,[31]

and that

---

[28]Id. at 35 ¶ 130.

[29]Id. ¶ 132.

[30]Id. at 42 ¶ 161.

[31]Id. at 36 ¶ 136.

Mr. Thomas was denied adequate medical care by the Defendants after he indicated that he could not breathe and the Defendants failed to administer any type of mitigating aid (such as CPR). Instead, they handcuffed Mr. Thomas, which contributed to his injuries and damages, and ultimately was the start of the chain of events that resulted in his untimely death. No officer performed CPR or administered any type of medical aid to Mr. Thomas while waiting on the arrival of the paramedics. Moreover, they waited approximately 10 minutes to call the paramedics. Indeed, the delay in providing CPR was a proximate and contributing cause to Mr. Thomas's injuries and resulting death, as well as, failing to inform the medical personnel that Thomas had been tased.[32]

Plaintiffs also allege:

143. The CHV, the CSVV, the SBISD, the CMV actions — in promoting the excessive force against Mr. Thomas — affirmatively demonstrates a custom, policy, or procedure of excessive force, and deliberate indifference.

144. The CHV, the CSVV, the SBISD, the CMV are liable because they all had policies, procedures, or customs of ignoring the obvious constitutional violations, namely excessive force by use of tasers.[33]

The moving defendants seeks dismissal of all the claims asserted against them because plaintiffs have failed to allege facts capable of showing either (1) a federal law claim for violation of the Fourth or the Fourteenth Amendments, or (2) a state law claim for negligence, wrongful death, or survival claims all of which are bared by the defendants' statutory immunity.

---

[32]Id. at 38 ¶ 147.

[33]Id. at 37 ¶¶ 143-44.

-11-

## A.    Federal Law Claims

Plaintiffs' federal law claims are brought under 42 U.S.C. § 1983, which provides a private right of action for the deprivation of rights, privileges, and immunities secured by the Constitution or laws of the United States.  Section 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983.  "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Conner, 109 S. Ct. 1865, 1870 (1989).  To establish § 1983 liability plaintiffs must plead and prove that Thomas suffered "(1) a deprivation of a right secured by federal law (2) that occurred under color of state law, and (3) was caused by a state actor." Victoria W. v. Larpenter, 369 F.3d 475, 482 (5th Cir. 2004). "Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law."  Id. (quoting Baker v. McCollan, 99 S. Ct. 2698, 2695 (1970)).  "The first inquiry in any § 1983 suit" is "to isolate the precise constitutional violation with which [the defendant] is charged." Graham, 109 S. Ct. at 1870 (quoting Baker, 99 S. Ct. at 2692).

Plaintiffs' allegations that the defendants detained Thomas and subsequently shot him with a taser without reason raise claims that must be analyzed under the Fourth Amendment, while plaintiffs' allegations that the defendants denied and/or delayed needed medical care raise claims that must be analyzed under the Fourteenth Amendment. See Graham, 109 S. Ct. at 1870-71 (excessive force); Hare v. City of Corinth, 74 F.3d 633, 639 (5th Cir. 1995)(en banc) (medical care).

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." The Fourth Amendment makes searches and seizures conducted outside the judicial process, i.e., without prior approval by judge or magistrate, unreasonable per se subject only to a few specifically established exceptions. See Katz v. United States, 88 S. Ct. 507, 514 (1967). For example, in Devenpeck v. Alford, 125 S. Ct. 588, 593 (2004), the Court held that a warrantless arrest by a law officer is reasonable under the Fourth Amendment if there is probable cause to believe that a criminal offense has been or is being committed. Moreover,

> *all* claims that law enforcement officers have used excessive force — deadly or not — in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under a "substantive due process" approach.

Graham, 109 S. Ct. at 1871. See also Tennessee v. Garner, 105 S. Ct. 1694, 1699-1700 (1985) (Fourth Amendment governs claims for use of excessive force to effect arrest).

-13-

To state a Fourth Amendment claim for excessive use of force, plaintiffs must allege facts capable of showing that Thomas suffered a seizure and "(1) an injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable." Peña v. City of Rio Grande City, Texas, 879 F.3d 613, 619 (5th Cir. 2018).

> The second and third elements collapse into a single objective-reasonableness inquiry, . . . guided by the following Graham factors: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."

Id. (citing Scott v. Harris, 127 S. Ct. 1769, 1776 (2007), and Graham, 109 S. Ct. at 1872). See also Kingsley v. Hendrickson, 135 S. Ct. 2466, 2473 (2015) (holding "that a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable").

The Fourteenth Amendment protects a pretrial detainee's right to reasonable care for serious medical needs unless the failure to supply such care was reasonably related to a legitimate governmental objective. See Hare, 74 F.3d at 647-48. The standard to apply in analyzing a denial of medical care claim asserted by a pretrial detainee depends upon whether the claim is directed to a condition of confinement or to an episodic act or omission. Scott v. Moore, 114 F.3d 51, 53 (5th Cir. 1997) (en banc). Plaintiffs acknowledge that the claims at issue here are directed to an

-14-

episodic act or omission.[34]  A state official's episodic act or
omission violates a pretrial detainee's due process right to
reasonable medical care if the official acts with subjective
deliberate indifference to the detainee's rights.  Id. at 54.  A
government official acts with deliberate indifference if he "knows
of and disregards an excessive risk to [a detainee's] health or
safety; the official must both be aware of facts from which the
inference could be drawn that a substantial risk of serious harm
exists, and he must also draw the inference."  Farmer v. Brennan,
114 S. Ct. 1970, 1979 (1994).  A delay in treatment violates the
constitutional right to medical care when "there has been
deliberate indifference [that] results in substantial harm."
Easter v. Powell, 467 F.3d 459, 463 (5th Cir. 2006) (per curiam).

Plaintiffs contend that the Supreme Court's ruling in
Kingsley, 135 S. Ct. at 2466, arguably changes the subjective
deliberate indifference standard to an objective deliberate
indifference standard.[35]  In Kingsley the Court held that a pretrial
detainee asserting a claim for excessive use of force during a
seizure only had to show that "the force purposely or knowingly
used against him was objectively unreasonable."  Id. at 2473.  But
Kingsley is silent regarding denial of medical care claims.

---

[34]Plaintiffs' Response to SBISD Defendants' MD, Docket Entry
No. 9, p. 13; Plaintiffs' Response to Defendants' MD, Docket Entry
No. 10, p. 14.

[35]Plaintiffs' Response to SBISD's MD, Docket Entry No. 9,
p. 14; Plaintiffs' Response to Defendants' MD, Docket Entry No. 10,
p. 15.

Moreover, since <u>Kingsley</u> was decided, the Fifth Circuit has continued to apply the deliberate indifference standard when a pre-trial detainee's denial of medical care claim, as here, arises out of a single act or omission. <u>See</u>, <u>e.g.</u>, <u>Zimmerman v. Cutler</u>, 657 F. App'x 340, 347-48 (5th Cir. 2016) (per curiam) ("In this circuit, a constitutional claim by a pretrial detainee arising from a one-time denial of medical care is governed 'by a standard of subjective deliberate indifference as enunciated by the Supreme Court in <u>Farmer</u>.'"). The subjective deliberate indifference standard thus applies to plaintiffs' claims; a standard that requires plaintiffs to allege facts capable of establishing that the defendant officers engaged in conduct that showed disregard for a serious medical need, including refusing to treat Thomas, ignoring complaints of a serious medical need, or intentionally treating Thomas incorrectly. <u>See</u> <u>Domino v. Texas Department of Criminal Justice</u>, 239 F.3d 752, 756 (5th Cir. 2001).

Plaintiffs may also state a claim under § 1983 for an officer's failure to prevent another officer's violation of a constitutional right. To do so plaintiffs must allege facts capable of establishing that (1) the bystanding officer knew that a fellow officer was violating an individual's constitutional rights, (2) had a reasonable opportunity to prevent the violation, and (3) chose not to act. <u>Whitley v. Hanna</u>, 726 F.3d 631, 646 (5th Cir. 2013), <u>cert. denied</u>, 134 S. Ct. 1935 (2014) (citing <u>Hale v. Townley</u>, 45 F.3d 914, 919 (5th Cir. 1995)).

1. <u>Plaintiffs' Federal Law Claims Against the Individual Officer Defendants are Subject to Dismissal</u>

   (a) Applicable Law

   **(1) Official and Personal Liability**

Public officials like the individual officer defendants, Hanson, Scott, Pineda, Sanford, Silliman, and Nowlin, may be sued pursuant to 42 U.S.C. § 1983 in either their official and/or their personal capacities. <u>Hafer v. Melo</u>, 112 S. Ct. 358, 361-63 (1991) (citing <u>Kentucky v. Graham</u>, 105 S. Ct. 3099, 3105-06 (1985)). The real party in interest in an official-capacity suit is the governmental entity, not the named official. <u>Id.</u> at 361 (citing <u>Graham</u>, 105 S. Ct. at 3105).

> [T]he distinction between official-capacity suits and personal-capacity suits is more than "a mere pleading device." . . . State officers sued for damages in their official capacity are not "persons" for purposes of the suit because they assume the identity of the government that employs them. . . . By contrast, officers sued in their personal capacity come to court as individuals.

<u>Id.</u> at 362. In this case plaintiffs have sued the individual defendants only in their personal capacities. To state a personal-capacity claim under § 1983 plaintiff must allege that while acting under color of state law defendants were personally involved in the deprivation of a right secured by the laws or Constitution of the United States, or that their wrongful actions were causally connected to such a deprivation. <u>James v. Texas Collin County</u>, 535 F.3d 365, 373 (5th Cir. 2008). A supervisor is not personally liable for his subordinate's actions in which he had no involvement. <u>Id.</u>

## (2)  Qualified Immunity

Public officials sued in their personal capacities under § 1983 are shielded from suit by the doctrine of qualified immunity.  Saucier v. Katz, 121 S. Ct. 2151, 2155-56 (2001), overruled in part by Pearson v. Callahan, 129 S. Ct. 808, 812 (2009).  "Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation,' . . . it is effectively lost if a case is erroneously permitted to go to trial."  Id. at 2156.  Qualified immunity protects officers from suit unless their conduct violates a clearly established right.  Harlow v. Fitzgerald, 102 S. Ct. 2727, 2738 (1982).  The doctrine of qualified immunity was created to balance the interest of compensating persons whose federally protected rights have been violated against the fear that personal liability might inhibit public officials in the discharge of their duties.  See Johnston v. City of Houston, Texas, 14 F.3d 1056, 1059 (5th Cir. 1994).  Claims of qualified immunity require a two-step analysis: (1) whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the defendant officer's conduct violated a constitutional right; and (2) whether that right was clearly established at the time of the alleged misconduct.  Saucier, 121 S. Ct. at 2156.  It is within the discretion of the district court to decide which of the two steps to address first.  Pearson, 129 S. Ct. at 818.  Courts examine each officer's alleged actions independently to determine whether he or she is entitled to

qualified immunity. <u>Newman v. Guedry</u>, 703 F.3d 757, 762 (5th Cir. 2012), <u>cert. denied</u>, 134 S. Ct. 162 (2013). Once a defendant asserts qualified immunity, the burden shifts to the plaintiff to negate the defense of qualified immunity. <u>Id.</u> at 761. <u>See also</u> <u>Club Retro, L.L.C. v. Hilton</u>, 568 F.3d 181, 194 (5th Cir. 2009) ("When a defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense."). Despite this burden-shifting, all reasonable inferences must be drawn in the non-movant plaintiffs' favor.

### (b)  Application of the Law to the Allegations

The six individual officer defendants who have moved for dismissal, Hanson, Williams, Pineda, Sanford, Silliman, and Nowlin, argue that the § 1983 claims asserted against them should be dismissed because plaintiffs have failed to allege facts capable of establishing that they detained, searched, or used any force against Thomas, that they witnessed an unreasonable use of force against Thomas but failed to intervene, or that they denied or delayed reasonable medical care to Thomas.[36]

---

[36]<u>See</u> SBISD Defendants' MD, Docket Entry No. 7, p. 2; SBISD Defendants' Reply to Plaintiffs' Response to Motion to Dismiss of Defendants Spring Branch Independent School District, Scott Williams and Jerry Hanson ("SBISD Defendants' Reply"), Docket Entry No. 11, p. 1; Defendants' MD, Docket Entry No. 8, pp. 1-19; Defendants', Carlos Pineda, Stephen Sanford, Eric Silliman, Donald Nowlin, City of Hedwig Village and City of Spring Valley Village Reply to Plaintiffs' Response to Defendants' Motion to Dismiss (continued...)

Plaintiffs respond by summarizing the facts alleged in their Amended Complaint, none of which mention any actions that four of the defendant officers — Hanson, Williams, Sanford, or Nowlin — took or failed to take.[37] Regarding the remaining two officers, Silliman and Pineda, plaintiffs allege that Silliman arrived on the scene at 2:19 a.m., i.e., after Darrehshoori tased Thomas at 2:16 a.m., but in time to help Darrehshoori and Wood try to move Thomas out of the creek, and that when fire medic, Kory Young, asked for handcuffs to be removed from Thomas, Silliman removed the handcuffs.[38] Plaintiffs allege that once paramedics pulled Thomas out of the creek that Pineda helped two other officers place Thomas on flat ground away from the creek's incline.[39] Nevertheless, plaintiffs argue that Silliman and Nowlin stood by without intervening as Darrehshoori used excessive force by shooting Thomas with a taser, and that each of the six individual officer defendants delayed medical care to Thomas by failing to inform medical personnel that Thomas had been tased and/or that Thomas could not breath.[40]

---

[36](...continued)
claims Asserted in Plaintiffs' Amended Complaint ("Defendants' Reply"), Docket Entry No. 13, pp. 2-5.

[37]Plaintiffs' Response to SBISD Defendants' MD, Docket Entry No. 9, pp. 4-7 ¶¶ 1-12; Plaintiffs' Response to Defendants' MD, Docket Entry No. 10, pp. 3-5.

[38]Plaintiffs' Response to Defendants' MD, Docket Entry No. 10, pp. 4-5.

[39]Id. at 5.

[40]Id. at 9-11. See also Plaintiffs' Response to SBISD
(continued...)

Although plaintiffs have alleged that Silliman arrived on the scene at 2:19 a.m., plaintiffs have not alleged facts capable of establishing when Hanson, Williams, Sanford, Nowlin, Pineda arrived. Since, moreover, plaintiffs allege that Darrehshoori shot Thomas with a taser at 2:16 a.m., i.e., before Silliman arrived, they have not alleged facts capable of establishing that anyone other than Darrehshoori and Wood was present or had a reasonable opportunity to prevent Thomas from being shot with a taser.

Accordingly, plaintiffs have failed to allege facts capable of establishing a § 1983 claim for violation of Thomas's Fourth Amendment right to be free from excessive use of force by taser. See Peña, 879 F.3d at 619; Whitley, 726 F.3d at 646-47. Nor have plaintiffs alleged facts capable of establishing when or if any of the individual officer defendants learned that Thomas had been shot with a taser or that Thomas could not breathe, or that despite learning those facts failed to communicate them to medical personnel. Absent allegations of fact capable of establishing that any of the individual defendants subjectively knew that Thomas urgently needed medical care, but purposely chose to delay Thomas's access to care by failing to tell medical personnel that Thomas had been shot with a taser or that he could not breathe, plaintiffs have failed to state a claim against any of them for violation of Thomas' Fourteenth Amendment right to medical care. See Estelle v. Gamble, 97 S. Ct. 285, 291-92 (1976).

---

[40](...continued)
Defendants' MD, Docket Entry No. 9, pp. 17-20.

Plaintiffs cite <u>Leatherman v. Tarrant County Narcotics Intelligence & Coordinator Unit</u>, 113 S. Ct. 1160 (1993), for the proposition that the Supreme Court has rejected a heightened pleading standard in § 1983 actions against municipalities. But neither the Supreme Court nor the Fifth Circuit have applied <u>Leatherman</u> to § 1983 claims asserted against individual defendants entitled to qualified immunity. <u>See id.</u> at 1162 (reserving the question of whether the heightened pleading standard could apply to suits against individual state officials asserting qualified immunity). <u>See also Elliott v. Perez</u>, 751 F.2d 1472, 1482 (5th Cir. 1985) (announcing heightened pleading standard to be satisfied whenever qualified immunity is asserted); and <u>Burns-Toole v. Byrne</u>, 11 F.3d 1270, 1275 (5th Cir.), <u>cert. denied</u>, 114 S. Ct. 2680 (1994) (declining to overrule <u>Elliott</u> in light of <u>Leatherman</u>).

Although defendants cite <u>Babb v. Dorman</u>, 33 F.3d 472, 479 (5th Cir. 1994), for the proposition that a § 1983 complaint must allege facts sufficient to defeat a qualified immunity defense, that is no longer the rule in this circuit. <u>See Schultea v. Wood</u>, 47 F.3d 1427, 1430 (5th Cir. 1995) (en banc) ("[W]e will no longer insist that plaintiff fully anticipate the defense [of qualified immunity] in his complaint at the risk of dismissal under Rule 12.").

Nevertheless, when asserting claims against multiple defendants in their individual capacities, plaintiffs must allege with specificity what each defendant did to violate each alleged

right. See Iqbal, 129 S. Ct. at 1948 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). Because plaintiffs have failed to allege facts capable of establishing that Hanson, Williams, Sanford, Nowlin, Silliman, or Pineda engaged in acts that violated Thomas' Fourth Amendment rights to be free from unreasonable detention, search, or use of force, or Thomas' Fourteenth Amendment right to reasonable medical care, the motions to dismiss the § 1983 claims urged by Hanson, Williams, Sanford, Nowlin, Silliman, and Pineda will be granted and those claims will be dismissed with prejudice.

    2.    <u>Plaintiffs' Federal Law Claims Against CHV, CSVV, and SBISD are Subject to Dismissal</u>

        (a)  Applicable Law

In <u>Monell v. Department of Social Services of the City of New York</u>, 98 S. Ct. 2018, 2035-36 (1978), the Supreme Court held that municipalities are "persons" subject to suit under 42 U.S.C. § 1983, but that municipalities cannot he held liable on a <u>respondeat superior</u> basis, <u>i.e.</u>, a municipality cannot be held liable simply because one of its employees violated a person's federal rights. For a municipality to be held liable under § 1983, the municipality itself must cause the violation through its policies. "[I]t is when execution of a government's policy or

-23-

custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Id. at 2037-38. Municipal liability under § 1983 requires proof of (1) a policy maker; (2) an official policy; and (3) a violation of a constitutional right whose moving force is the policy or custom. Id. See also Cox v. City of Dallas, Texas, 430 F.3d 734, 748 (5th Cir. 2005), cert. denied, 126 S. Ct. 2039 (2006) ("Municipal liability under . . . § 1983 requires proof of three elements in addition to the underlying claim of a violation of rights: 'a policymaker; an official policy; and a violation of constitutional rights whose "moving force" is the policy or custom.'").

(b) Application of the Law to the Alleged Facts

Three local governmental entities, CHV, CSVV, and SBISD, argue that the § 1983 claims asserted against them should be dismissed because plaintiffs have failed to allege facts capable of establishing that the moving force behind any alleged violation of Thomas's Fourth or Fourteenth Amendment rights occurred in accordance with an official policy, custom, or practice, adopted, approved, or ratified by an official policymaker.[41]

---

[41]See SBISD Defendants' MD, Docket Entry No. 7, pp. 11-19; SBISD Defendants' Reply, Docket Entry No. 11, pp. 5-7; Defendants' (continued...)

-24-

Plaintiffs respond by arguing that the local governmental entities moving for dismissal can be held liable under § 1983 because they ratified their officers' conduct when, after reviewing reports of the incident prepared not only internally but also by the Houston Police Department and by the Harris County District Attorney's Office, they each failed to discipline the officers involved,[42] and because they each failed to train their officers either to intervene or to provide medical care when needed to prevent the violation of Thomas's constitutional right.[43]

### (1) SBISD

Having found that plaintiffs have failed to allege facts capable of establishing that Hanson and Williams, the only two SBISD officers that plaintiffs allege were involved in the incident, violated Thomas's constitutional rights, plaintiffs' § 1983 claims against SBISD for maintaining a custom, policy, practice, or procedure of using excessive force or failing to provide reasonable medical care to pretrial detainees, or failing to discipline, train, or supervise officers adequately, fail as a matter of law. See Los Angeles v. Heller, 106 S. Ct. 1571, 1573

---

[41](...continued)
MD, Docket Entry No. 8, pp. 22-25; Defendants' Reply, Docket Entry No. 13, pp. 6-10.

[42]Plaintiffs' Response to SBISD Defendants' MD, Docket Entry No. 9, pp. 11-12; Plaintiffs' Response to Defendants' MD, Docket Entry No. 10, pp. 11-13.

[43]Plaintiffs' Response to SBISD Defendants' MD, Docket Entry No. 9, pp. 14-15, 21-22; Plaintiffs' Response to Defendants' MD, Docket Entry No. 10, pp. 15-17, 22-23.

(1986) (per curiam) (finding that if the officer inflicted no constitutional injury, then the city could not be liable under § 1983); Saenz v. Heldenfels Brothers, Inc., 183 F.3d 389, 392-93 (5th Cir. 1999) (recognizing that a municipality cannot be liable when the individual officers cannot be held liable for an underlying constitutional violation). Alternatively, the court concludes that plaintiffs' § 1983 claims against the SBISD are subject to dismissal for failure to allege facts capable of establishing that SBISD maintained a municipal practice, custom, or policy that caused a violation of Thomas' constitutional rights.

### (2) CHV and CSVV

For the reasons stated in § III.A.1(b), above, the court has found that plaintiffs have failed to allege facts capable of establishing that CHV Officer Sanford and CSVV Officer Pineda violated constitutional rights guaranteed to Thomas by the Fourth and the Fourteenth Amendments. Because plaintiffs have also alleged claims against CHV Officers Frazier and Hernandez and CSVV Officers Darrehshoori and Wood — none of whom have made an appearance in this action, for purposes of the pending motions the court assumes without deciding that the plaintiffs have alleged facts capable of establishing that these officers engaged in conduct that violated Thomas's constitutional rights.[44]

---

[44]Plaintiffs allege that Darrehshoori shot Thomas with a taser, that Wood was present when Thomas was shot with a taser but failed
(continued...)

(i)  Plaintiffs' Have Failed to State a Claim
                         Based on Ratification

The ratification theory of municipal liability has been recognized by the Supreme Court.  See City of St. Louis v. Praprotnik, 108 S. Ct. 915 (1988).  There the Court stated:

> [W]hen a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with *their* policies.  If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final.

Id. at 926 (emphasis in original).  The ratification theory is commonly used in the employment context.

> For example, if a school board — a policymaker under *Monell* — approves a superintendent's decision to transfer an outspoken teacher, knowing of the superintendent's retaliatory motive for doing so, the governmental entity itself may be liable; but if the school board lacks such awareness of the basis for the decision, it has not ratified the illegality and so the district itself is not liable.

Milam v. City of San Antonio, 113 F. App'x 622, 626 (5th Cir. 2004).  Regardless of the context in which it is raised, the ratification theory "is necessarily cabined in several ways . . . to prevent the ratification theory from becoming a theory of *respondeat superior*."  Id. at 626-27.  The mere failure to

---

[44] (...continued)
to intervene to prevent the tasing, that Darrehshoori and/or Wood tossed Thomas down the hill, that Frazier handcuffed Thomas when he was in medical distress, and that none of these officers told medical personnel that Thomas had been shot with a taser or had trouble breathing.  See Plaintiffs' Amended Complaint, Docket Entry No. 6, pp. 14-18 ¶¶ 38-60, and 27-30 ¶¶ 94-110.

investigate a subordinate's decision does not amount to ratification. Id. at 627. And policymakers who simply go along with a subordinate's decision do not thereby vest final policymaking authority in the subordinate. Id. The ratification theory must be applied with the understanding that "[p]olicymakers alone can create municipal liability, and so any violation must be causally traceable to them, not just to their subordinates." Id. Applying the ratification theory as plaintiffs propose in this case would turn it into de facto respondeat superior.

While the mere failure to investigate a police officer's conduct that allegedly violated a person's constitutional rights cannot amount to ratification, the converse must also be true: The mere decision to investigate and exonerate also cannot amount to ratification. In Milam mentioned above, the Fifth Circuit cited a school board as an example of a policy maker that could approve or ratify with full knowledge, its subordinate's decision to commit an act that violated a constitutional right. Because the school board had acted with full knowledge and approved the conduct to be perpetrated by the school board's subordinate, the school board not only ratified the conduct, but also was complicit. That makes the constitutional violation traceable to the policymaker. Id. at 626.

Here, however, even assuming that the cities' policymakers, i.e., the Chiefs of Police, reviewed the conduct of the defendant officers with respect to the incident about which plaintiffs complain, plaintiffs allege that the policymakers reviewed that

conduct after the fact, _i.e._, after the conduct had been committed without approval. To hold the cities liable because the policymakers concluded that the officers acted appropriately would convert liability through ratification into _respondeat-superior_ liability. See id. at 627 ("It is not an easy fit because, at least facially, an illegal arrest that is completed without the involvement of any policymaker does not look like the typical situation in which a policymaker could 'approve[] [the employee's] decision and the basis for it' such that municipal policy can be said to have caused the harm."). See also Fraire v. City of Arlington, 957 F.2d 1268, 1278-79 (5th Cir.), cert. denied, 113 S. Ct. 462 (1992) (refusing to infer an unconstitutional custom or policy from a municipality's failure to discipline an officer for a single incident).

Plaintiffs have notably failed to allege facts capable of establishing a pattern or practice of ratifying similar acts and have failed to cite any case in which a court has upheld a claim for ratification against a municipality under similar facts. The court therefore concludes that plaintiffs have failed to allege facts capable of establishing a § 1983 claim that either the CHV or the CSVV ratified their officers' conduct.

(ii) Plaintiffs' Have Failed to State a Claim
Based on Failure to Train or Supervise

Plaintiffs argue that the CHV and the CSVV may be held liable for their officers' actions because they failed to adequately train or supervise their officers to prevent the alleged violations of Thomas's constitutional rights. In order to plead § 1983 claims based on an alleged failure to train or supervise plaintiffs must plead facts capable of showing that the defendants were deliberately indifferent to an obvious need for training or supervision. <u>Peterson v. City of Fort Worth, Texas</u>, 588 F.3d 838, 849 (5th Cir. 2009), <u>cert. denied</u>, 131 S. Ct. 66 (2010) (citing <u>Brown v. Bryan County, Oklahoma</u>, 219 F.3d 450, 458 (5th Cir. 2000), <u>cert. denied</u>, 121 S. Ct. 1734 (2001)). In other words it must have been obvious to the municipal defendants that the alleged unconstitutional conduct was the highly predictable consequence of not training or supervising their officers. <u>Id.</u>

Plaintiffs have not alleged facts capable of establishing that the CHV or the CSVV lacked sufficient training or supervision for their police officers, or that the lack of training or supervision would obviously result in the alleged harm suffered by Thomas, <u>i.e.</u>, death from being shot by a taser in violation of the Fourth Amendment right to be free from the excessive use of force or death resulting from the failure to render reasonable medical care in violation of the Fourteenth Amendment. Nor have plaintiffs alleged facts capable of establishing that the CHV or the CSVV knew that such wrongful conduct had occurred in the past or had occurred with

-30-

such frequency that they were on notice of their officers' need for additional training or supervision. Id. Because plaintiffs have made no such allegations, they have failed to state claims for which relief may be granted based on an alleged failure of the CHV or the CSVV to train or supervise their officers. See Culbertson v. Lykos, 790 F.3d 608, 625 (5th Cir. 2015). Thus the motions to dismiss the § 1983 claims asserted against the CHV and the CSVV will be granted and those claims will be dismissed with prejudice.

## B.    State Law Claims

Citing Texas Civil Practices & Remedies Code § 71.002, 71.004(c), 71.021, and 101.023, and asserting that defendants Darrehshoori's and Wood's foreseeable misuse of the Axon taser, and Axon's inadequate training of the officers' and the cities, and poor supervision of the taser's use caused Thomas' wrongful death, plaintiffs allege that the defendants are liable to Thomas' statutory beneficiaries for damages caused by their employee defendants' wrongful actions.[45]   To support a claim for wrongful death under Texas law, plaintiffs must allege that death resulted from the negligent or wrongful act of a person or his agent or servant. Id. at 71.002(b). Asserting that they are entitled to immunity, defendants argue that the state law claims asserted against them are statutorily barred by Texas Tort Claims Act (TTCA).[46]

---

[45]Id. at 30-34 ¶¶ 111-27.

[46]SBISD Defendants' MD, Docket Entry No. 7, pp. 20-21; Defendants' MD, Docket Entry No. 8, p. 24 ¶¶ 40-42; Defendants' (continued...)

1.  State Law Claims Against the Individual Defendants Are
    Barred by Statutory Immunity

Section 101.106(f) of the TTCA provides:

> If a suit is filed against an employee of a governmental
> unit based on conduct within the general scope of that
> employee's employment and if it could have been brought
> under this chapter against the governmental unit, the
> suit is considered to be against the employee in the
> employee's official capacity only.  On the employee's
> motion, the suit against the employee shall be dismissed
> unless the plaintiff files amended pleadings dismissing
> the employee and naming the governmental unit as
> defendant on or before the 30th day after the date the
> motion is filed.

Section 101.106(f) "foreclose[s] suit against a government employee

in his individual capacity if he was acting within the scope of

employment." Franka v. Velasquez, 332 S.W.3d 367, 381 (Tex. 2011).

The TTCA defines "scope of employment" to mean "the performance for

a governmental unit of the duties of an employee's office or

employment and includes being in or about the performance of a task

lawfully assigned to an employee by competent authority."  Tex.

Civ. Prac. & Rem. Code Ann. § 101.001(5).  "An official acts

within the scope of her authority if she is discharging the duties

generally assigned to her." Anderson v. Bessman, 365 S.W.3d 119,

125 (Tex. App. Houston [1st Dist.] 2011, no pet.).  An act is not

within the general scope of employment if it was "within an

independent course of conduct not intended by the employee to serve

any purpose of the employer." Alexander v. Walker, 435 S.W.3d 789,

---

[46](...continued)
Reply, Docket Entry No. 13, pp. 10-11 ¶¶ 19-25.

792 (Tex. 2014). Because there is no dispute that plaintiffs have sued the defendant officers in their individual capacities for acts that occurred in the course and scope of their employment, plaintiffs' claims for negligence, wrongful death, and survival claims are subject to dismissal under § 101.106(f). Accordingly, defendants' motions to dismiss the state law claims that plaintiffs have asserted against the individual officer defendants will be dismissed with prejudice.

2. <u>State Law Claims Against the Governmental Defendants Are Barred by Statutory Immunity</u>

Political subdivisions such as the CHV, the CSVV, and SBISD, are protected by governmental immunity except where the state legislature has waived that immunity in the Texas Tort Claims Act (TTCA). <u>See</u> Tex. Civ. Prac. & Rem. Code § 101.021; <u>City of Dallas v. Albert</u>, 354 S.W.3d 368, 373 (Tex. 2011) ("[I]mmunity from suit deprives courts of jurisdiction over suits against entities unless the Legislature has expressly consented[.]"). Governmental immunity applies "to subdivisions of the state, such as counties." <u>Alcala v. Texas Webb County</u>, 620 F.Supp.2d 795, 801 (S.D. Tex. 2009) (citing <u>Harris County v. Sykes</u>, 136 S.W.3d 635, 638 (Tex. 2004)). The limited waiver of governmental immunity provided by the TTCA is for claims arising from the use of publicly owned vehicles, premises defects, and injuries arising from conditions or

-33-

use of property.  Id.  The TTCA does not waive immunity for
intentional torts, such as assault, battery, false imprisonment,
false arrest, and civil conspiracy.  Franka, 332 S.W.3d at 376 &
n. 35 (citing Tex. Civ. Prac. & Rem. Code § 101.057(2)).  All
common law tort claims alleged against a governmental unit are
presumed to be governed by the TTCA regardless of whether the TTCA
waives immunity for the claim[s] at issue.  Id. at 378 and 385.
The wrongful death and survival claims that plaintiffs have
asserted against the governmental entities are therefore precluded
by their governmental immunity because those claims do not fall
within the TTCA's limited waiver of governmental immunity.  See
City of Watauga v. Gordon, 434 S.W.3d 586, 593 (Tex. 2014) (holding
as a matter of state law, "[c]laims of excessive force in the
context of a lawful arrest arise out of a battery rather than
negligence, whether the excessive force was intended or not").

## C.  **Plaintiffs' Requests for Leave to Amend Will Be Denied**

At the end of the briefs filed in response to the pending
motions to dismiss, plaintiffs request leave to amend by stating:

> Plaintiffs have amended their complaint only once under
> Federal Rules of Civil Procedure 15(b)(1).  If the Court
> is of the opinion that any defendant or any cause of
> action is to be dismissed plaintiff[s] request[] leave to
> amend and also limited discovery.  Additional complaint
> facts would be added about, at least, the lack of

training, lack of a policy or policy, practices, customs and/or supervisor's responsibility.[47]

Federal Rule of Civil Procedure 15(a)(2) states that "[t]he court should freely give leave [to amend] when justice so requires." "Although Rule 15[a] 'evinces a bias in favor of granting leave to amend,' it is not automatic." Matter of Southmark Corp., 88 F.3d 311, 314 (5th Cir. 1996), cert denied, 117 S. Ct. 686 (1997) (quoting Wimm v. Jack Eckerd Corp., 3 F.3d 137, 139 (5th Cir. 1993)). "A decision to grant leave is within the discretion of the trial court. Its discretion, however, is not broad enough to permit denial if the court lacks a substantial reason to do so." Id. (citing State of Louisiana v. Litton Mortgage Co., 50 F.3d 1298, 1302-1303 (5th Cir. 1995) (per curiam)). The Fifth Circuit has held that in exercising its discretion, a court may consider various criteria including, inter alia, the failure to cure deficiencies by amendments previously allowed and futility of the proposed amendment. Id. at 314-15 (citing Foman v. Davis, 83 S. Ct. 227, 230 (1962)).

Because plaintiffs have already had an opportunity to file an amended complaint, because plaintiffs filed detailed responses to the defendants' motions to dismiss in which they argued that their amended complaint was sufficient to withstand the motions to

---

[47]Plaintiffs' Response to SBISD Defendants' MD, Docket Entry No. 9, p. 24; Plaintiffs' Response to Defendants' MD, Docket Entry No. 10, p. 26.

dismiss, and because plaintiffs have failed either to submit a proposed second amended complaint or to describe additional facts that could be alleged in such a complaint, the court concludes that the plaintiffs have plead their best case, and that allowing plaintiffs the opportunity to file another pleading would do nothing but prolong the inevitable. Accordingly, plaintiffs' requests for leave to amend will be denied.

## IV. **Dismissal of Remaining Defendants for Want of Prosecution**

On July 25, 2018, this action was removed from the 281st District Court of Harris County, Texas, where it was originally filed on May 31, 2018, under Cause No. 2018-36505.[48] The Notice of Removal states that the following defendants were served, agreed to removal, and removed this action within thirty days of having been served: Stephen Sanford, City of Hedwig Village, Texas, City of Spring Valley, Texas, Eric Silliman, Donald Nowlin, and Carlos Pineda.[49] The Notice of Removal also states that "[n]o other [d]efendant has been served with process in the state action."[50]

---

[48]Defendants' Carlos Pineda, Stephen Sanford, Eric Silliman, Donald Nowlin, City of Hedwig Village and City of Spring Valley, Notice of Removal, Docket Entry No. 1 and Exhibit B (state court docket sheet).

[49]Id. at 2.

[50]Id.

-36-

On August 7, 2018, the court issued an Order for Conference and Disclosure of Interested Parties (Docket Entry No. 3) that notified plaintiffs that

> Fed. R. Civ. P. 4(m) requires defendant(s) to be served within 90 days after the filing of the complaint. The failure of plaintiff(s) to file proof of service within 90 days after the filing of the complaint may result in dismissal of this action by the court on its own initiative without further notice.[51]

On August 22, 2018, Plaintiffs' Amended Complaint was filed (Docket Entry No. 6).

On August 31, 2018, the following three defendants appeared in this action by filing a joint motion to dismiss: Spring Branch Independent School District, Scott Williams, and Jerry Hanson.[52]

Federal Rule of Civil Procedure 4(m) authorizes a district court to dismiss a complaint if not timely served, unless good cause is shown for the failure. If good cause is shown, the district court must extend the time for service of process. The following defendants have not made an appearance in this action, and the court's file does not reflect proof that plaintiffs have served a summons and complaint on them: the City of Memorial Village, Axon, CSVV Officers Joseph Darreshoori and Trent B. Wood in their individual capacities, CHV Officers Nathan Frazier and Richard Antonio (a/ka/ Reginald) Hernandez in their individual

---

[51]Docket Entry No. 3, ¶ 9.

[52]SBISD Defendants' MD, Docket Entry No. 7.

capacities, CMV Sergeant Mark Stokes in his individual capacity, and Manny Aguilar in his individual capacity. Because plaintiffs have neither shown that defendants the City of Memorial Village, Axon, or the officers who have been sued in their individual capacities, i.e., Darreshoori, Wood, Frazier, Hernandez, Stokes, and Aguilar, have been served with a summons and complaint, nor shown good cause for failure to effect service on them, all claims asserted against these defendants will be dismissed without prejudice for want of prosecution pursuant to Federal Rule of Civil Procedure 4(m).

## V. **Conclusions and Order**

For the reasons stated in §§ III.A.1 and III.B, above, the court concludes that plaintiff has failed to allege facts stating plausible claims for violation of federal or state law against six of the individual officer defendants, i.e., Hanson, Williams, Pineda, Sanford, Silliman, and Nowlin. For the reasons stated in §§ III.A.2 and III.B, above, the court concludes that plaintiff has failed to allege facts stating plausible claims for violation of federal or state law against three governmental entity defendants, i.e., the City of Hedwig Village, the City of Spring Valley Village, and the Spring Branch Independent School District. Accordingly, the Motion to Dismiss of Defendants Spring Branch Independent School District, Scott Williams, and Jerry Hanson,

Docket Entry No. 7, is **GRANTED**; and Defendants' Carlos Pineda, Stephen Sanford, Eric Silliman, Donald Nowlin, City of Hedwig Village and City of Spring Valley Village Motion to Dismiss Claims Asserted in Plaintiffs' Amended Complaint, Docket Entry No. 8, is **GRANTED**.

For the reasons stated in § III.C, above, plaintiffs' request for leave to amend is **DENIED**.

For the reasons stated in § IV, above, the court concludes that all claims asserted against the following defendants should be dismissed without prejudice for want of prosecution under Federal Rule of Civil Procedure Rule 4(m): City of Memorial Village, Axon, CSVV Officers Joseph Darrehshoori and Trent B. Wood in their individual capacities, CHV Officers Nathan Frazier and Richard Antonio (a/ka/ Reginald) Hernandez in their individual capacities, CMV Sergeant Mark Stokes in his individual capacity, and Manny Aguilar in his individual capacity.

**SIGNED** at Houston, Texas, on this the 20th day of March, 2019.

SIM LAKE
UNITED STATES DISTRICT JUDGE