# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 17, 2022

Lyle W. Cayce
Clerk

No. 19-20373

United States Courts
Southern District of Texas
FILED

June 08, 2022

Nathan Ochsner, Clerk of Court

LAKITA CARR, *Individually and as Representative of* ESTATE OF DARRALL THOMAS; ANGELINA LEFFYEAR, *as next friend of* D. T., JR.; ESTATE OF DARRALL THOMAS,

*Plaintiffs—Appellants,*

*versus*

THE CITY OF SPRING VALLEY VILLAGE; THE CITY OF HEDWIG VILLAGE; MEMORIAL VILLAGE; AXON, *formerly known as* TASER INTERNATIONAL; JOSEPH DARREHSHOORI; TRENT B. WOOD; NATHAN FRAZIER; RICHARD ANTONIO HERNANDEZ; CARLOS PINEDA; ERIC SILLIMAN; MANNY AGUILAR; DONALD NOWLIN; MARK STOKES; JERRY HANSON; STEVE SANFORD; SPRING BRANCH INDEPENDENT SCHOOL DISTRICT; SCOTT WILLIAMS,

*Defendants—Appellees.*

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:18-CV-2585

Before DENNIS, SOUTHWICK, and HO, *Circuit Judges.*

PER CURIAM:*

This case arises from the death of Darrall Thomas, who was allegedly tased and brutalized after the defendant law enforcement officers confronted him as a potential suspect in an attempted ATM break-in. Although the facts alleged by the plaintiffs (collectively "Plaintiffs"), who are the representative of Thomas's estate and the next friend to his minor child, are gruesome and disturbing, because we agree with the district court that several defendants, including the primary offending officer, were never properly served, and that the allegations against the remaining defendants failed to state a claim for which relief may be granted, we must affirm the district court's dismissal of Plaintiffs's claims.

## I.

### A.

The following allegations are taken from the plaintiff's amended complaint, which we assume to be true for purposes of this appeal. *See Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 582 (5th Cir. 2020). In the early morning of May 31, 2016, a silent alarm went off when three men attempted to break into an ATM in a suburb of Houston, Texas. The alarm summoned several local police departments. It is undisputed that Thomas was not one of the men shown in the ATM surveillance footage. Nonetheless, Thomas was apprehended while standing in a creek near the site of the ATM by City of Spring Valley Village (CSCC) Police Officer Joseph Darrehshoori, who was subsequently joined by the other named defendant officers ("Defendants"). Although Thomas was compliant, the officers tased and manhandled him during the encounter. Thomas was initially lethargic and could not stand or walk up the creek bed's incline even when the officers attempted to aid or force him out of the creek. When he was unable to answer questions about the ATM robbery, an officer threatened to throw him down

---

* Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

a hill, and Darrehshoori tased him. Thomas told those present that he could
not breathe and pleaded for aid or simply to be allowed to catch his breath.
The officers ultimately carried Thomas out of the creek and handcuffed him,
laying Thomas facedown on the ground. Emergency Medical Technicians
(EMTs) then saw that Thomas was unresponsive, and they placed him on a
backboard and attempted to perform CPR. The EMTs then transported
Thomas to the hospital, but he was pronounced dead upon arrival.

## B.

Thereafter Plaintiffs brought this suit in state court against the
involved officers, and the various jurisdictions for which they worked for
municipal liability, asserting claims under 42 U.S.C. § 1983 that the
defendants violated Thomas's constitutional rights by using excessive force
in his arrest and by exhibiting deliberate indifference to his medical needs, as
well as municipal liability and as state law claims of negligence, wrongful
death, and survival. Plaintiffs also sued Axon, the manufacturer of the taser
used on Thomas. The complaint alleged that Thomas did not resist, did not
fail to comply with any command, did not pose a threat to anyone present,
and had already surrendered by the time Darrehshoori tased him. It also
alleged that the officers' application of physical force interfered with
Thomas's capacity to breathe, that the use of the taser by Darrehshoori was
the proximate cause of Thomas's death, and that Darrehshoori's
redeployment of the taser multiple times ran counter to manufacturer and
researchers' warnings.

After the case was removed to federal court and Plaintiffs filed an
amended complaint, the district court granted Defendants' motions to
dismiss pursuant to Fed. R. Civ. P. Rule 12(b)(6). It determined, with
respect to individual officers for which proofs of service had been filed—
officers Hanson, Williams, Pineda, Sanford, Silliman, and Nowlin—that the
allegations were insufficient to state excessive force or deliberate indifference
claims. As for the municipalities for which proofs of service had been filed,
the district court concluded that the Spring Branch Independent School

District (SBISD) could not be liable because the conduct of its officers did not violate the Constitution, and, with respect to the City of Hedwig Valley (CHV) and the City of Spring Valley Village (CSVV), that Plaintiffs' claims of ratification and failure to train or supervise failed as a matter of law.[1] Finally, the district court dismissed without prejudice the claims against the City of Memorial Village (CMV), Axon, and Officers Darreshoori and Wood because no return of service had been filed with the court within 90 days of the plaintiffs' filing their complaint. *See* FED. R. CIV. P. Rule 4(M) (authorizing *sua sponte* dismissal). The district court denied Plaintiffs' motion to amend and later also denied Plaintiffs' motion to alter or amend the judgment as to Darreshoori under Rule 59(e).

Plaintiffs timely appeal the dismissal of their claims under § 1983 for excessive force and deliberate indifference against the individual officers who were served and for municipal liability against the municipalities for which proofs of service were filed ahead of the district court's order.

## II.

This court reviews the district court's grant of a motion to dismiss de novo. *Bass v. Stryker Corp.*, 669 F.3d 501, 506 (5th Cir. 2012). "All well-pleaded facts are accepted as true and viewed in the light most favorable to the nonmovant." *Id.* (citation omitted). Dismissal is appropriate only "when the plaintiff has not alleged enough facts to state a claim to relief that is plausible on its face or has failed to raise his right to relief above the speculative level." *Id.*

Plaintiffs also argue that the district court should have granted leave to amend rather than dismissing their amended complaint after concluding that the allegations were insufficient to state a claim. Denial of leave to

---

[1] The district court also determined that Plaintiffs' state law claims failed by virtue of Texas statutes granting immunity to the defendants. We do not examine that ruling as Plaintiffs do not appeal it here.

amend is generally reviewed for an abuse of discretion. *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 566 (5th Cir. 2003). Likewise, denial of a motion to alter or amend a judgment under Rule 59(e) is reviewed "only to determine whether it was an abuse of discretion." *S. Constructors Group, Inc. v. Dynalectric Co.*, 2 F.3d 606, 611 (5th Cir. 1993).

## III.

### A.

We first address Plaintiffs' arguments regarding service of process on Darrehshoori. The district court dismissed the claims against CMV, Axon, Darreshoori, and Wood[2] because those defendants "ha[d] not made an appearance in this action, and the court's file d[id] not reflect proof that plaintiffs have served a summons and complaint on them." Plaintiffs argue on appeal that they did in fact timely serve Darrehshoori.

In its original memorandum opinion and order dismissing Plaintiffs' claims against Darrehshoori without prejudice, the district court determined there was no evidence that Darrehshoori had been served. In ruling on Plaintiffs' motion for new trial, however, the district court acknowledged that Docket Entry No. 17 reflects return of service for Darrehshoori, but that the return of service reflects a state court Citation and Petition filed almost one month after the action was removed to federal court and two days after the Plaintiffs filed their amended complaint in federal court. The district court noted that Plaintiffs have not explained why there was a delay between the service on Darrehshoori in August 2018 and filing with the court in April 2019, many months later. The district court also determined that "the evidence before the court indicates that service of the state court citation and petition on Darrehshoori on August 24, 2018, was not proper because by that date this action had not only been removed to federal court but plaintiffs had filed an amended complaint," and the amended complaint was never

---

[2] Plaintiffs appeal this ruling here only with respect to Darreshoori.

delivered to Darreshoori. Because "[a] split in authority exists in this district as to whether a plaintiff in a removed action may 'complete' service on a defendant by using process obtained from the state court before the removal," the district court concluded that the dismissal could not have been a manifest error of law justifying relief under Rule 59(e) because of the lack of clarity. *Compare Alexander Technologies, Inc. v. International Frontier Forwarders, Inc.*, No. Civ. A. H-05-2598, 2006 WL 3694517, at *1 (S.D. Tex. Dec. 14, 2006) (service of state court citation insufficient after removal), *with Minter v. Showcase Systems, Inc.*, 641 F. Supp. 2d 597, 599-602 (S.D. Miss. 2009) ("completion of state service of process following removal" is "proper service of process pursuant to 28 U.S.C. § 1448"); *see also Beecher v. Wallace*, 381 F.2d 372, 373 (9th Cir. 1967) (new federal process required for removed cases).

Plaintiffs assert on appeal that Darrehshoori was properly served, as the return of service reflects service within 90 days of the beginning of the lawsuit as required by Rule 4(m). They argue that the lawsuit was originally filed in state court on May 31, 2018 and Darrehshoori was served with state process on August 24, 2018.

We ultimately need not decide whether post-removal service of state process is sufficient to satisfy the Federal Rules' service requirements as a general matter. *See generally* Fed. R. Civ. P. 4. Even if such service can be sufficient, service of a superseded complaint—as occurred here given the intervening filing of Plaintiffs' amended complaint—is not proper service. It is settled in this Circuit that "[a]n amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading." *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994); *see also Eason v. Holt*, 73 F.3d 600, 603 (5th Cir. 1996) ("amended complaint itself superseded the original complaint under the well-settled law of this circuit"). Logically, then, we agree with the district court that serving a superseded complaint can have no legal effect.

The Tenth Circuit and multiple district courts have reached this same result, reasoning that serving a superseded complaint along with a summons does not comply with the requirements of Rule 4(c)—that "[a] summons must be served with a copy of the complaint"—because a superseded complaint is "no more than a mere scrap of paper insofar as the case is concerned." *PNC Bank, N.A. v. Twin Tier Dev. Group, Inc.*, 3:10-CV-2020, 2010 WL 5300819, at *1 (M.D. Pa. Dec. 20, 2010) (citing *Phillips v. Murchison*, 194 F. Supp. 620, 622 (S.D.N.Y. 1961); *see also Gilles v. United States*, 906 F.2d 1386, 1390 (10th Cir. 1990) ("[W]here an amended pleading supersedes the original complaint, subsequent service of the superseded prior or original pleading is improper." (citations and quotation marks omitted)).

Rule 59(e) motions "are for the narrow purpose of correcting manifest errors of law or fact or presenting newly discovered evidence," and constitute "an extraordinary remedy that should be used sparingly." *Def. Distributed v. United States Dep't of State*, 947 F.3d 870, 873 (5th Cir. 2020) (cleaned up). Plaintiffs did not present new evidence, and, although the district court may have erred by finding no evidence of service as to Darrehshoori in its original opinion order, we nonetheless find no manifest error in its denial of Plaintiffs' Rule 59(e) motion. Finding that Darrehshoori was not properly served, we do not consider Plaintiffs' excessive force and deliberate indifference claims against him.

## B.

In their motion to dismiss, the officers who were properly served—Hanson, Williams, Pineda, Sanford, Silliman, and Nowlin—asserted the defense of qualified immunity. "Qualified immunity protects officers from suit unless their conduct violates a clearly established constitutional right." *Mace v. City of Palestine*, 333 F.3d 621, 623 (5th Cir. 2003). After a defendant asserts the defense of qualified immunity, "[a] plaintiff seeking to overcome qualified immunity must show: '(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time

of the challenged conduct.'" *Cass v. City of Abilene*, 814 F.3d 721, 728 (5th Cir. 2016) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)) (internal quotation marks omitted). While "[t]he plaintiff bears the burden of negating qualified immunity" after the defendant asserts the defense, *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010), we "accept all well-pleaded facts as true [and] view[] them in the light most favorable to the plaintiff." *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999). The district court did not reach the second prong of the qualified immunity analysis because it determined that the allegations in the plaintiffs' complaint failed to plausibly state a violation of Thomas's constitutional rights. Plaintiffs' complaint makes clear that the officers involved here did not act in unison. Thus, we separately analyze whether the district court was correct regarding each officer's alleged conduct. *See Darden v. City of Fort Worth*, 866 F.3d 698, 731 (5th Cir. 2017). With respect to the plaintiffs' excessive force claims, the Fourth Amendment provides protections against an officer's use of excessive force during an arrest or other seizure. *Graham v. Connor*, 490 U.S. 386, 389, 394 (1989). "To prevail on an excessive-force claim, a plaintiff must show (1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Darden*, 866 F.3d at 727. "Our precedents recognize that inquiries regarding whether a use of force was clearly excessive or clearly unreasonable are often intertwined, and we consider those questions together." *Id.* (cleaned up); *see Pena v. City of Rio Grande City*, 879 F.3d 613, 619 (5th Cir. 2018) ("The second and third elements collapse into a single objective-reasonableness inquiry.").

"Excessive force claims are necessarily fact-intensive; whether the force used is excessive or unreasonable depends on 'the facts and circumstances of each particular case.'" *Darden*, 880 F.3d 728 (cleaned up). "In making this determination, a court should consider the totality of the circumstances, 'including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and

whether he is actively resisting arrest or attempting to evade arrest by flight.'"³ *Id.* at 728–29 (quoting *Graham*, 490 U.S. at 396). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 729 (quoting *Graham*, 490 U.S. at 396). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* (quoting *Graham*, 490 U.S. at 396–97).

There are four officers against whom the complaint makes no allegations regarding any use of force, nor even that they were present at the scene of the incident: Hanson, Williams, Sandford, and Nowlin It is axiomatic that an officer who uses no force at all has not used force that is excessive to the needs of the situation. Although Plaintiffs frame their claims against these officers as excessive force claims, they actually assert claims of "bystander liability" which this court has recognized may attach to officers "who [were] present at the scene and d[id] not take reasonable measures to protect a suspect from another officer's use of excessive force." *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995). But these claims are nonetheless unavailing; bystander liability attaches only "where the officer '(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a

---

³ An officer's use of force also violates the Fourth Amendment if it constitutes "deadly force," unless "the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others." *Gutierrez v. City of San Antonio*, 139 F.3d 441, 446 (5th Cir. 1998) (quoting *Tennessee v. Garner*, 471 U.S. 1, 11 (1985)). Although Plaintiffs' opening brief occasionally uses the phrase "deadly force," it does not engage the standard of whether any officers' conduct creates a substantial risk of death or serious bodily injury. Thus, because we cannot conclude that any of the officers' conduct was presumptively unreasonable, this argument is forfeited. *See Batiste v. Theriot*, 458 F. App'x 351, 355 (5th Cir. 2012) (concluding that even misuse of a taser in violation of department protocol does not amount to deadly force).

reasonable opportunity to prevent the harm; and (3) chooses not to act.'" *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013) (quoting *Randall v. Prince George's Cnty., Md.*, 302 F.3d 188, 204 (4th Cir. 2002)). It generally will not apply where an officer is not present at the scene of the constitutional violation. *See id.* Plaintiffs do not allege reasonable measures these four officers could have taken to stop any excessive force, nor even that they knew Darrehshoori used the taser or otherwise engaged in conduct constituting excessive force against Thomas. Plaintiffs' amended complaint simply makes no allegations whatsoever regarding these officers in relation to the force used against Thomas. Accordingly, we AFFIRM the district court's dismissal of Plaintiffs' excessive force claims against defendants Hanson, Williams, Sandford, and Nowlin.

The district court also dismissed the excessive force claims against two additional officers as failing to state a Fourth Amendment violation: Pineda and Silliman. Again, Plaintiffs in fact assert claims for bystander liability. Both officers are alleged to have "stood by without intervening as Darrehshoori used excessive force by shooting Thomas with a taser." Although the district court determined that Plaintiffs failed to allege that Silliman or Pineda was present when the taser was used, this is unclear on the face of the amended complaint. Nonetheless, the allegation made against Silliman or Pineda does not speak to their knowledge of a constitutional violation by another officer or their opportunity to prevent it. *See Whitley*, 726 F.3d at 646. Thus, we agree with the district court that Plaintiffs did not state a claim of bystander liability with regard to these two officers.

As to the excessive force claims made against Silliman and Pineda directly, the amended complaint alleged that Pineda helped two other officers carry Thomas out of the creek bed and place him on flat ground. Similarly, the amended complaint alleges that Silliman assisted Derrehshoori and Wood in their efforts to help Thomas climb out of the creek and that Silliman removed Thomas' handcuffs at the suggestion of the EMTs. To the extent that these actions can be characterized as using force to effect a seizure, they

were reasonable. We thus agree with the district court that Plaintiffs failed to state an excessive force claim as to Pineda and Silliman. Because no violation was alleged against all officers who were properly served, they are entitled to qualified immunity. *Ashcroft*, 563 U.S. at 735. We AFFIRM the dismissal of these claims.

Plaintiffs' appeal to this court fails to brief an argument as to the individual officers' deliberate indifference to Thomas's medical needs. Plaintiffs instead cite a deliberate indifference standard only in the context of their arguments for municipal liability. Thus, any challenge to the district court's dismissal of these claims is forfeited on appeal, and we AFFIRM the district court in this respect as well. *See In re Katrina Canal Breaches Litig.*, 620 F.3d 455, 459 n.3 (5th Cir. 2010).

## C.

As to the municipalities that were properly served, the district court concluded that Plaintiffs failed to plead a plausible claim against them for municipal liability. "To state a claim against a municipality under 42 U.S.C. § 1983, a plaintiff must allege that there was either an official policy or an unofficial custom, adopted by the municipality, that was the moving force behind the claimed constitutional violation." *Thompson v. Mercer*, 762 F.3d 433, 441–42 (5th Cir. 2014) (citations and internal quotation marks omitted). "If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). But even when a valid policy exists, a failure to train officers of its implementation can support municipal liability "if it amounts to deliberate indifference," either because employees violate the policy so frequently "that the factfinder can infer from the pattern of violations that 'the need for further training must have been plainly obvious to the policymakers,'" or if the risk of constitutional violations was or should have been an 'obvious' or 'highly predictable consequence' of the alleged training inadequacy.'"

*Littell v. Houston Indep. Sch. Dist.*, 894 F.3d 616, 624 (5th Cir. 2018) (quoting
*City of Canton v. Harris*, 489 U.S. 378, 386–92 (1989)).

Plaintiffs seek to hold CSVV, CHV, and SBISD liable for the actions
of their officers, alleging both ratification and failure to train. But it is self-
evident that, in order for a municipal policy to be "the moving force behind
the claimed constitutional violation," there must be a claimed constitutional
violation. *Thompson*, 762 F.3d at 441–42. With respect to SBISD, having
found that Plaintiffs have not adequately alleged that its officers—Hanson
and Williams—violated Thomas's rights, we conclude no liability can attach
to SBISD.

As for CSVV and CHV, because we cannot conclude that there was
no constitutional violation on the part of their officers who were not properly
served, we follow the district court in assuming the existence of a
constitutional violation for purposes of analyzing whether these municipal
entities may be held responsible.

We agree that Plaintiffs have not alleged facts sufficient to state a
claim that either of these municipalities could be held responsible for the acts
or omissions of their officers. With respect to a ratification theory, the
amended complaint alleges that each municipality ratified their officers'
conduct "when[,] after a meaningful investigation by each department's
Internal affairs, Houston Police Department and the District Attorney and
the Villages each were able to review said reports[,] not one municipality
discpl[in]ed any officer." But "a policymaker who defends conduct that is
later shown to be unlawful does not necessarily incur liability on behalf of the
municipality," *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 848 (5th Cir.
2009). Even assuming that this investigation constitutes ratification, a
municipality cannot be liable under the ratification theory unless its
policymaker ratified what it knew at the time to be unconstitutional conduct.
*See City of St. Louis v. Praprotnik*, 485 U.S. 112, 127-30 (1988). Several Fifth
Circuit cases have confirmed the quite narrow scope of the ratification
theory. *See Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (1992) (finding

that allegations that a municipality declined to punish an officer's conduct do not establish unconstitutional ratification); *Berry v.McLemore*, 670 F.2d 30 (5th Cir. 1982) *(*same); *Piotrowski v. City of Houston*, 237 F.3d 567, 581-582 (5th Cir. 2001) (Plaintiff's disagreement with a municipality's conclusions regarding alleged misconduct does not support a ratification claim.).

As to a failure to train theory, Plaintiffs point to no other instances of similar uses of excessive force or delays in the provision of medical attention to detainees that could contribute to an inference that policymakers knew more training was needed. *See Littell*, 894 F.3d at 624. Nor do they point to a specific inadequacy in the training the officers received for which a constitutional violation was the 'obvious' or 'highly predictable. consequence." *Id.* And, more fundamentally, the amended complaint does not specify which municipalities failed in what ways, as they were surely not identical in their trainings and policies. For these reasons, we AFFIRM the district court's dismissal of Plaintiffs' municipal liability claims.

## IV.

Finally, Plaintiffs challenge the district court's denial of their request to amend their complaint a second time. They argue that this was error due to Rule 15(a)'s bias in favor of granting leave to amend, the complex nature of the case, and their inability to take discovery. They further assert that amendment would not be futile in this case.

A district court "[i]n deciding whether to grant leave to amend, . . . may consider a variety of factors in exercising its discretion, including undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment." *Schiller*, 342 F.3d at 566. The district court here specifically pointed to the likely futility of additional amendments and that Plaintiffs had already amended their complaint once. As it explained, "plaintiffs ha[d] already had an opportunity to file an amended complaint[,]

. . . filed detailed responses to the defendants' motions to dismiss in which they argued that their amended complaint was sufficient to withstand the motions to dismiss, and . . . failed either to submit a proposed second amended complaint or to describe additional facts that could be alleged in such a complaint." Thus, we find no abuse of discretion in the district court's denial of Plaintiffs' motion to amend.

## V.

For the foregoing reasons, we AFFIRM.